PORTER
v.
TALCOTT.

PORTER & PORTER *against* TALCOTT & BOWERS.

ASSUMPSIT, to recover $6500, being the difference on ex-
change of vessels, tried before his honour, the late Mr. Justice
PLATT, at the *New-York* sittings, on the 2*d* of *May*, 1821.

The declaration was, that the defendants, at the several
times thereinafter mentioned, being traders and joint dealers,
under the name, firm and style of *Talcott & Bowers*, at *New Or-
leans*, in the state of *Louisiana*, to wit, at the city of *New-York*,
and in the county of *New-York;* and the plaintiffs, at the
said several times, being traders and joint dealers, under the
name, firm and style of *William & Charles Porter*, to wit,
at the city of *New-York*, and in the county of *New-York* : they,
the plaintiffs, on the 15*th* day of *December*, A. D. 1818, at, &c.
were possessed of a certain brig or vessel, called the *Emma*,
as of their own proper brig or vessel ; and the defendants,
on the same day and year, were possessed of a certain ship
or vessel, called the *Vigilant*, as of their own proper ship or
vessel ; and the plaintiffs, being so possessed of their said
brig or vessel, and the defendants being so possessed of their
said ship or vessel, to wit, on the day and year aforesaid, at,
&c. a certain discourse was had and moved between the

Count on
exchange of
goods, and an
agreement to
pay the differ-
ence. The
like in another
form.

The plain-
tiffs declared,
setting forth
an exchange
of vessels be-
tween them
and the defen-
dants; and
that the defen-
dants agreed
to pay $6500,
as the differ-
ence or boot
money—proof
that the agree-
ment was to
pay in notes
at 4, 6 and 8
months, the
suit being
brought after
the notes fell
due; *it seems*,
that this is no
variance.

The common count for goods sold and delivered, is, in such a case, sufficient :

But it would, in both particulars, be otherwise, had the suit been brought for not giv-
ing the notes, before the terms of credit had expired.

The defendants, by their agent, exchanged their vessel, for the plaintiffs' vessel, and the
plaintiffs agreed to take as the difference, $6500, and to receive therefor, the promissory
notes of the agent and his partner, at 4, 6 and 8 months: The notes were given accor-
dingly, but not being paid ; *held*, that there not being an agreement to receive these notes
in payment and discharge of the defendants, they were liable.

And this, though they had, at the time of the contract, and to the time when, and after
the notes fell due, and up to the time when their agent, one of the makers, became insol-
vent, funds in his hands, more than sufficient to pay the notes.

Where an agent buys goods for his principal, and gives his own notes, they are consid-
ered, so far as the question whether they operate as payment is concerned, as the notes of
the principal himself.

The note of the defendant, given at the time of the sale, is no payment, unless there be
an express agreement to receive it as such.

So of his agent's note.

The question is the same, whether the note be given for a precedent or cotemporary
debt ;

And this, whether it be the note of the party, or of a third person ;

Being in each of these cases, whether it was *agreed* to be received as *payment*.

Application for a new trial, on account of newly discovered evidence, considered.

plaintiffs and the defendants, of and concerning an exchange between the plaintiffs and the defendants to be made, that is to say, the aforesaid brig of the plaintiffs for the said ship of the defendants; and upon that discourse, afterwards, to wit, on the day and year aforesaid, at, &c. in consideration that the plaintiffs, at the special instance and request of the defendants, would exchange the said brig of the plaintiffs for the said ship of the defendants, they, the defendants, then and there undertook and faithfully promised the plaintiffs, that they, the defendants, would pay to the plaintiffs the sum of $6500, lawful money, &c. to boot, with the aforesaid ship of the defendants for the aforesaid brig of the plaintiffs, when they, the defendants, should be thereunto afterwards requested; and the plaintiffs, in fact, say, that confiding in the promise and undertaking of the defendants, so made as aforesaid, they, the plaintiffs. afterwards, to wit, on the day and year aforesaid, at, &c. did exchange their said brig with the defendants, for the said ship of the defendants, and by reason thereof, and according to the promise and undertaking of the defendants, so made as aforesaid, they, the defendants, then and there became liable to pay, and ought to have paid to the plaintiffs, the said sum of $6500, to wit, at, &c.  Yet, &c. (*assigning a breach in the non-payment of the* $6500.)

And whereas, heretofore, to wit, on the day and year aforesaid, at, &c. in consideration that the plaintiffs, at the special instance and request of the defendants, would deliver to them, the defendants, a certain other brig or vessel of them, the plaintiffs, of great value, called the *Emma*, in exchange for a certain other ship or vessel of the defendants, called the *Vigilant*, they, the defendants undertook, and then and there faithfully promised the plaintiffs, to deliver the said ship or vessel of the defendants to the plaintiffs, and to pay them a certain sum of money, to wit, the sum of $6500, lawful money, &c. in exchange for the said brig or vessel of the plaintiffs; and the plaintiffs aver, that they, confiding in the promise and undertaking of the defendants, did afterwards, to wit, on the day and year aforesaid, at, &c. deliver to the defendants the said brig or vessel of the plaintiffs, and

although the defendants, in part performance of their said promise and undertaking, did then and there deliver to the plaintiffs the said ship or vessel of them, the defendants, in exchange for the said brig or vessel of the plaintiffs; yet, &c. (*breach as before.*)

To these counts were added a general count for goods, &c. sold and delivered, in the usual form, with the money counts, &c.

To this declaration, the defendants pleaded *non-assumpserunt* and payment, with notice of set off.

At the trial, *David S. Squire*, a witness for the plaintiffs, testified, that in *December*, 1818, he was a clerk to *Noah Talcott*, of the city of *New-York*, who was a merchant, then carrying on business, under the name of *N. & D. Talcott*, (his former partner, *Daniel Talcott*, being dead) and who is brother to one of the defendants. That the defendants resided in *New-Orleans*, and that the ship *Vigilant*, owned by them, was then lying in the port of *New-York*, under the charge of *Noah Talcott*, who exchanged her for the brig *Emma*, owned by the plaintiffs, who were merchants, also residing in *New-York*, but that he was not present at the bargain between them. A memorandum was then shown to the witness, which he testified to be in his hand-writing, and that it was a copy of an entry he had been directed to make by *Noah Talcott*, in the books of *N. & D. Talcott*, in the words following, viz:

" *December 5th.* Disposed this day of the ship *Vigilant*, to *Wm. & Chs. Porter*, in exchange for their brig *Emma*, allowing them $6500, payable in 4, 6 and 8 mos. to receive and deliver on Monday next.

" The damage, the *Emma* received, from a gale of wind, prevented the exchange till the 15th, which was considered the day of sale by the parties."

The witness, being then asked by the plaintiffs' counsel, if *Noah Talcott* was not the agent of the defendants, at the time of the transaction, and whether the exchange was not made by him as their agent, the defendants' counsel objected to the question, and insisted that the agency could not

UTICA,
August, 1823.

PORTER
v.
TALCOTT.

be proved in that way, especially as the witness had already testified, that he was not present at the bargain for the exchange, and that, as the supposed agent was present, he was the proper witness on that subject ; and the Judge deciding that the objection was well taken, a bill of sale was then produced, by the plaintiffs' counsel, purporting to be executed, under seal, by the defendants, by their attorney, *Noah Talcott,* to the plaintiffs, for the ship *Vigilant ;* and the witness testified, that he was a subscribing witness thereto. But the Judge stating that sufficient proof had not been produced, as to the authority of *Noah Talcott,* for executing this bill of sale, the plaintiffs then called *Noah Talcott,* who testified, that he was the general agent or factor of the defendants, in the city of *New-York,* they residing and carrying on business, as merchants, at *New-Orleans ;* that, in *December,* 1818, he bargained with the plaintiffs, in the city of *New-York,* for the exchange of a ship, owned by the defendants, called 'the *Vigilant,* for a brig called the *Emma ;* that he executed a bill of sale, as attorney for the defendants, of the ship *Vigilant,* to the plaintiffs, and received a bill of sale, executed by *John H. Howland,* to the defendants, of the brig *Emma,* and was to pay the plaintiffs $6500 difference, in the notes of his house ; that he executed the bill of sale of the *Vigilant,* as attorney for the defendants, under the supposition, at the time, that he had a power of attorney, under seal, from them, enabling him so to do ; but he had since diligently searched for the supposed power, and could not find it.  He thinks he had such power of attorney, but he cannot swear positively to that fact.  He further stated, that the defendants had had the use of the brig *Emma* ever since the exchange, and that she was still employed and owned by them.

The plaintiffs' counsel then proposed to read the bill of sale, but the defendants' counsel objected, that the authority had not been sufficiently shewn.  The Judge reserved the question, and permitted the bill of sale to be read, which bore date the 15*th December,* 1818, and was for the consideration of $5000, executed by *Noah Talcott,* as attor-

ney for the defendants, under seal, reciting the registry, and containing a covenant to warrant the title to the ship. The plaintiffs then read, in evidence, a bill of sale, executed by *John H. Howland* and *Caleb Barstow*, of the brig *Emma*, to the defendants, dated the 16*th* day of *December*, 1818.

*John H. Howland*, a witness for the plaintiffs, testified, that, at the time of the sale, he and his partner held the brig *Emma*, which was registered in their names, and had been conveyed to them by the plaintiffs, as surety, for advances made by the plaintiffs, but which the plaintiffs repaid them ; that, by the plaintiffs' direction, about the 15*th* of *December*, 1818, they transferred the brig to the defendants, by the above mentioned bill of sale.

*David S. Squire* further testified, that the actual exchange of the vessels did not take place till the 15*th December*, by reason of a storm which intervened, and drove the *Emma* from her moorings ; that *Noah Talcott* gave three notes of his house, *N. & D. Talcott*, amounting to $6200, there being some arrangement made as to the $300, the residue of the sum agreed to be given on the exchange. The plaintiffs then produced the notes, which are in these words :

" Four months after date, we promise to pay Messrs. *William & Charles Porter*, or order, two thousand one hundred and sixty-six dollars $\frac{66}{100}$, value received. *New-York*, 15*th Decr.* 1818.

$$N. \text{ \& } D. \text{ } Talcott.$$

$2166$\frac{66}{100}$.

" Four months after date, we promise to pay Messrs. *William & Charles Porter*, or order, two thousand one hundred and sixty-six dollars and $\frac{66}{100}$, value received. *New-York*, 15*th Decr.* 1818.

$$N. \text{ \& } D. \text{ } Talcott.$$

" $1866$\frac{67}{100}$.

$$New\text{-}York, Decr. \text{ } 14th, 1818.$$

Ninety days after date, we promise to pay Mr. *Noah Brown*, or order, eighteen hundred and sixty-six dollars $\frac{67}{100}$, value received.

$$N. \text{ \& } D. \text{ } Talcott.$$

(Indorsed,) *Noah Brown*."

*Henry Post*, cashier of *Franklin Bank*, called by the plaintiffs, proved, that the largest notes were discounted, for the accommodation of the plaintiffs, at that bank; were protested for non-payment; and, by direction of *Noah Brown*, (who had indorsed them) were, when due, charged to his account, and, some days afterwards, delivered to him.

*Noah Brown*, a witness for the plaintiffs, proved, that the three notes were indorsed by him, at the plaintiffs' request, and discounted at the *Franklin Bank*, and taken up by him when due, *N. & D. Talcott* stopping payment before they became due; and that, within three or four months afterwards, he settled with the plaintiffs, and delivered up to them the notes.

*John H. Howland*, a witness for the defendants, testified, that Messrs. *Porters* had paid all that they owed him, and redeemed the *Emma*.

*Noah Talcott*, the above witness, being called by the defendants, and further examined, stated, that he made the bargain or contract, with the plaintiffs, for the exchange of the vessels, both of which were then in the port of *New-York*, the *Vigilant* being consigned to him by the defendants; that he fully informed the plaintiffs, that the *Vigilant* belonged to *Talcott & Bowers*, the defendants, on whose account he acted, and that the *Emma* was to be conveyed or transferred to them. The agreement was finally concluded on *Saturday*, the 5th of *December*, 1818, and was, that the plaintiffs should transfer to the defendants the brig *Emma*, and the witness, as attorney of the defendants, should transfer to the plaintiffs the ship *Vigilant*, in exchange, and that *N. & D. Talcott* should pay to the plaintiffs, for the difference in value between the two vessels, $6500, in the notes of *N. & D. Talcott*, payable at from six to eight months, in three equal payments; that the plaintiffs, at first, wished a shorter credit, which the witness refused: they also wished him to give an indorsement on the notes, which he also refused: it was a matter of negotiation between them—he wishing to obtain as long a credit as he could, and they endeavouring to obtain a shorter one; that it was clearly and distinctly understood between him and the plaintiffs, that the witness was

to give the notes of his house, *N. & D. Talcott*, for the $6500 ; that the credits were to be in three equal payments, at four, six, and eight months ; that the payment was to be made by the witness' house, and that nothing was said, nor any intimation made, directly or indirectly, during the negotiation, that the defendants were to be, in any wise, liable for the payment of the difference, or sum of $6500, or any part thereof ; that this agreement was made on *Saturday*, the *5th* day of *December*, and the vessels were to be reciprocally delivered on the *Monday* following. The plaintiffs suggesting, that they wished paper at a shorter credit, which might be discounted at the bank, the witness agreed that he would give his notes at a shorter credit, if desired, upon the understanding that the plaintiffs should provide for the same, until the expiration of the respective credits stipulated by the bargain, which the plaintiffs agreed to ; that a storm occurred on the *Saturday* following, which drove the *Emma* from her moorings, and it being apprehended, she might have sustained damage, the final execution of the bargain was postponed to the *15th* of *December*, when the vessels were respectively transferred and delivered ; the witness, as attorney of the defendants, executed the bill of sale of the *Vigilant*, and delivered her to the plaintiffs, and *John H. Howland*, by the plaintiffs' direction, executed the bill of sale to the defendants, of the *Emma*, and delivered her to the witness, as agent of the defendants ; that agreeably to the understanding and arrangement, the plaintiffs, on the day of the delivery of the vessels, requested of the witness two notes, each for $2166,66, payable to themselves respectively, at four months, which he drew and gave them, being the two notes first above set forth, and shortly afterwards they obtained from him another note, payable at ninety days, in favour of *Noah Brown*, which he also gave for $1866,67 ; that, at the time of the exchange, he opened an account in his books with the plaintiffs, in which he gave them credit for the difference of $6500, and charged them with the notes, so that as the notes were less than the amount of the credit by $300, that balance appeared due them on the account ; but it was distinctly under-

stood between him and the plaintiffs, that although he varied the amount and times of payment in the notes given, yet, the same being for their accommodation, they were to be renewed and kept running in such manner as to leave him to pay the amounts stipulated, at the times they would respectively become due, according to the agreement on the exchange of the vessels ; that he also, on the same 15*th* day of *December,* 1818, charged the defendants in his account with them, with the $6500, and advised them of his having made the exchange, and the charge against them of the sum in his accounts ; that on the 31*st* day of *December,* 1818, he made up and transmitted to the defendants, his account current with them, including the charge, in which the balance, after crediting himself with the charge due on account, was upwards of $7000 ; that the house of *Talcott & Bowers,* at the time of the exchange, had a balance in hands, his exceeding $13000 ; that they had been many years established as a mercantile house in *New-Orleans,* and he had been, and at the time in question, was their factor or general agent, in relation to commercial concerns in the city of *New-York* ; that they were in the habit of making him consignments to large amounts, and drawing upon him and directing investments and remittances to be made, which transactions involved an account of several hundred thousand dollars ; that he had desired the defendants to keep in his hands as large a balance as they could conveniently, for the purpose of affording him facilities in business ; that he had never requested them to make remittances, or otherwise furnish him with funds to meet the payment of the notes he had given the plaintiffs, or providing for the payment of the difference ; that he had such funds in his hands at the time of the bargain and exchange; that he had no recollection whatever, that he had ever expressed to the plaintiffs an expectation that funds would be sent him by the defendants, to provide for the payment of the difference, or that any thing of the kind was mentioned, when the bargain for the exchange of vessels took place ; such a thing might have possibly been mentioned, but he had no recollection of it; that he was posi-

tive; that no such expectation was mentioned or expressed, as an inducement to, or ground upon which the contract was made; that he had not suspended payment at that time, but gave the notes and made the agreement under a full expectation of paying, and of being able to pay the agreement he entered into in that respect, as the monies would become due ; that he found it necessary to suspend payment in the beginning of *March* ensuing ; that on the 30th day of *February*, ensuing the contract, finding his affairs pressing, he advised with two or three friends, who agreed to give. him some aid, and he then expected to be able to go on and meet his engagements ; but circumstances proving unfavourable, he finally, in the beginning of *March*, found it necessary to stop payment.

*John H. Howland*, being further examined by the plaintiffs, stated, that before the agreement for the exchange was made, the plaintiffs spoke to him, on the subject of taking *N. & D. Talcott's* note for the difference ; that the publick opinion of *N. & D. Talcott's* solidity was various ; and the witness himself, from what he understood, would not have taken their notes ; and he so mentioned to the plaintiffs, before they made the agreement for the exchange of vessels, when they began to treat on the subject, and told them that he himself, would not take their notes without security. And he refused to take them for the demand due him from the plaintiffs, and they made arrangements and paid him otherwise.

Upon this evidence, the defendants' counsel moved for a nonsuit, but his honour reserved the questions of law, arising on the case, and, by assent of counsel on both sides, directed the jury to find a verdict for the plaintiffs, subject to all questions of law, to be reserved for the decision of the Court; and further, to find specially, whether there was any agreement, that the plaintiffs should give entire and exclusive credit to *Noah Talcott*, the agent, or whether the credit was given to the defendants as principals, or whether there was any agreement what-

PORTER
v.
TALCOTT.

ever, in regard to the eventual responsibility of the defen-dants, in case of *Noah Talcott's insolvency.*

The jury returned the following verdict : " We find for the plaintiffs, $7363,21, subject to the opinion of the Court. We find also, that in the contract for the exchange of vessels, it was agreed, that the notes of *N.* & *D. Talcott* should be given for the difference, to wit, for $6500, at four, six and eight months ; that at the time of making the agree-ment, it was expressly declared by *Noah Talcott*, that he was acting as the authorised agent of *Talcott* & *Bowers*, of *New-Orleans ;* but that there is no evidence of any agreement or mutual understanding, that the said *Talcott* & *Bowers* were or were not bound to the plaintiffs for the amount of the notes of *N.* & *D. Talcott*, in the event of their insolvency."

Connected with the case, was a motion for a new trial, by the plaintiffs, on the ground of newly discovered evidence, which it is unnecessary to state, as the Court were with the plaintiffs, on the other grounds ; and it was only in the oppo-site event, that they desired another trial. This part of the case is briefly noticed in the opinion of his honour, Mr. Jus-tice WOODWORTH, to which the reader is referred.

*D. B. Ogden,* for the plaintiff. The exchange of ves-sels was valid and binding upon the defendants. An author-ity, under seal, was no more necessary than in the sale of any other goods or chattels, nor was a bill of sale necessa-ry. It may be so, for certain purposes, but not as between the parties, for the purposes of a sale.(*a*) If a bill of sale be not necessary, it follows, that the power to sell need not be sealed. Whether *N. Talcott* was or was not the general agent in *New-York,* of the defendants' house in *New-Orleans,* is to be dertermined, like all other questions of agency, from the circumstances of the case. He acted as the defendants' general commercial agent, in a variety of particulars, detail-ed in the case ; and, among other things, in the sale of their property. In the exchange of these vessels, he acted with-in the general scope of his authority. But what puts this question at rest is, that he immediately wrote to the defen-dants, informed them of his agency in this contract, and they recognized his act. No complaint was heard from them.

(*a*) *Wool-ley et al. v. Constant,* 4 *John.* 54.

They took possession of the vessel, received by their agent, in exchange, and still retain that possession. The plaintiffs took and retain possession of the other vessel. The defendants have never interposed any claim of right to it. They have thus fully recognized *N. Talcott's* acts.

Are they not, then, bound to pay for our vessel? It will be said that we received the notes of *N. Talcott* as payment. This we deny; and there is no evidence to shew, that they were so received. Before his notes fell due, he was insolvent. He says, to be sure, that the plaintiffs requested his notes; but it is plain that this must have been merely as security, for there is no evidence of an express agreement to abandon our claim against the defendants.

At any rate, whether we took the notes as payment or not, was a question fully and fairly submitted to the jury. It was put to them, to say distinctly, to whom the credit was given; upon this question they have distinctly passed, and have found that there never was any agreement to rely on *N. Talcott* alone. This was properly a question for the jury,(b) and their decision is conclusive.(c)

Suppose we had taken the note of the principals: if not paid, there is no doubt, that we might have waived the notes, and proceeded for the consideration. The note of the agent, or servant of the principal, is holden to have the same effect as his own.(d) On the question, how far a bill or note operates as payment, we refer to the following cases: *Stedman* v. *Gooch*, (1 *Esp. Rep.* 3;) *Putnam* v. *Lewis*, (8 *John.* 389;) *The People* v. *Howell*, (4 *id.* 296;) *Markle* v. *Hatfield*, (2 *id.* 455;) *Owenson* v. *Morse*, (7 *T. R.* 60;) *Tapley* v. *Martens*, (8 *id.* 451;) *Bolton* v. *Richard*, (6 *id.* 139;) *Puckford* v. *Maxwell*, (*id.* 52;) *Brown et al.* v. *Kewly et al.* (2 *B. & P.* 518;) *Murray* v. *Gouverneur*, (2 *John. Cas.* 438;) *Herring* v. *Sanger*, (3 *id.* 71.) The case of *Everett* v. *Collins*, in *Campbell*, is in point, and in *Bolton* v. *Richard*, Mr. *Wood*, (6 *T. R. page* 142,) read the note of a manuscript case, which will be found fully to sustain the doctrine we contend for in this. It was decided by *Ld. Thurlow*, on the petition of *Dickson*, in the matter of *Parker*, a bankrupt, and was a sale of goods, to be paid for in bills, at

(b) *Johnson* v. *Weed*, 9 *John.* 310.

(c) *id.*

(d) *Everett* v. *Collins*, 2 *Campb. Rep.* 515.

two months, which proved unavailable, and the creditor was allowed to go back to the original consideration. We also refer to *Tobey* v. *Barber*, (5 *John.* 68, 72 ;) and *Schermerhorn et al.* v. *Loines et al.* (7 *id.* 311.)

*W. Slosson*, contra, submitted the following points :

1. That the action for goods sold and delivered, does not lie ; the contract being a special one, as proved by witnesses. and found by the verdict, to pay *boot* on exchange of vessels, in a particular way.

2. That the contract proved, varies from that laid in the special counts, the boot or difference being, by the agreement, made payable in *N. & D. Talcott's* notes, having different periods of credit.

3. That the plaintiffs, with full knowledge that the exchange and bargain were for account of the defendants, elected to take *Talcott*, the agent, as their debtor, and cannot afterwards charge the principals.

4. That an agreement, at the time of the bargain, to take the notes of a third person in payment, is conclusive, and exonerates the purchaser.

5. More especially so in this case, where the agent charged it in account, and deducted the amount out of the funds of his principals, in his hands.

He remarked, that if this action should be sustained, it would bear very hard upon the defendants ; for *N. Talcott,* it will be seen, still continues largely indebted to them, on dealings, as their agent.

1. There is no doubt that the agreement to give the notes of *N. & D. Talcott*, was a part of the original contract of exchange. The jury find it to be so. This is a plain variance from the agreement as declared on. It is clear, that the general count for goods sold is not sustained ; for this was not a sale, but an exchange, which is different.(e) It has been expressly decided, that a general count will not do, where there is an exchange.(f) No general form of declaring will reach the consideration. If two considerations be

*(e)* 2 *Bl. Com.* 446. 2 *Ch. Pl.* 84. *Anon.* 3 *Salk.* 157.

*(f)* *Harris* v. *Fowle, cited arg. in* 1 *H. Bl.* 287. *Lawes on Pl.* 13, 14, 463.

stated, and the proof be of but one, the plaintiff cannot re-cover.(g)

2. Nor does the proof correspond with the first and second counts of the declaration, which are special. The first count sets forth a contract to exchange the vessels, and that the *defendants* undertook and promised the plaintiffs to pay them 6500 dollars to boot, &c. The second count is, that the *defendants* promised to deliver their vessel, and *to pay* 6500 *dollars, in exchange for the plaintiffs' vessel;* whereas the contract turns out, on proof, to be a promise to pay the 6500 dollars, boot money, *in the notes of N. & D. Tal-cott, at* 4, 6 *and* 8 *months*. The contract is wrongly set out, therefore, not only as to the kind of article in which the payment was to be made, being the notes of third persons, instead of money ; but the effect of the agreement, as set out, is to pay presently, or on demand. No time for payment is specified in the declaration ; whereas it was, in fact, to be by instalments. When the party proceeds upon a special agreement, he must state the contract truly in every material part. In *Clark* v. *Gray*,(h) *Lord Ellenborough* says, " It is sufficient, in either case, to state so much of each, as constitutes that contract, the breach of which is complained of ; prescribes the duty to be performed, and the time, manner and other circumstances of its performance, with this difference only, that in the case of an agreement, not under seal, the consideration must be stated, and no part of the entire consideration, for any promise contained in the agreement, can be omitted."

The finding of the jury also differs from the declaration. They find, not that *money* was to be paid, but *notes ;* not that these were to be paid presently, but at 4, 6 and 8 months. It will be seen by *Lawes on Pleading*, 113, 118, how far the Courts have gone in holding the party to strict proof of his contract as declared upon. It will be seen there, that a contract, which is in the alternative, must be so stated ; and if it be to do more than one act, both must be stated. In *Robertson* v. *Lynch*,(i) the plaintiff was nonsuited, because the contract was declared upon, as resting upon a *future* instead of a *past* consideration ; and the Court say, " the whole case clearly

UTICA,
August, 1823.

PORTER
v.
TALCOTT.

(g) *Lansing*
v. *M'Kilup*, 3
*Caines*, 286.
*Lawes* on *Pl.*
57.

(h) 6 *East*,
568, and vid.
also 1 *Ch. Pl.*
300 & 301.

(i) 18 *John*
451.

shows, that a special agreement did exist, in regard to man- ufacturing the wool for the plaintiff, who was to receive the avails, not in money, but in sattinets, upon paying 68 cents per yard. That agreement was partly executed, and had never been waived nor abandoned ; and, because the plain- tiff has made a mistake in not declaring according to the *real contract*, there is no reason why he should be permitted to resort to his general counts. The whole evidence entirely contradicts the idea of a general sale of the wool to the de- fendant. Where there is a count, on a special agreement, coupled with a general count for goods sold, the plaintiff may, undoubtedly, abandon his special count, even after he has attempted to prove it, and failed, and may then resort to his general count. But this can only be done where the proof is adapted to the general count. It can never be al- lowed where the goods were, in truth, delivered under a spe- cial agreement, as in this case ; and where the plaintiff might, beyond all question, sustain a proper count, on a spe- cial agreement. A contrary rule would enable the plaintiff, in every case, by his mere volition, to convert a special con- tract into a general *indebitatus assumpsit*." Thus, it makes no difference that a special contract is, in part, executed. The plaintiff must, notwithstanding, proceed upon the spe- cial contract, and cannot declare generally. This is by no means an idle distinction ; for, had the plaintiff declared here, according to the truth of the case, that the boot was payable in these notes, instead of money, he could never have recovered ; because the defendant might have shewn per-

(j) 3 B. &
P. 582. S. C.
is cited, arg. in
4 B. & P. 331,
by Best, Serjt.

formance. In *Dutton* v. *Solomonson*,(*j*) Ld. *Alvanly*, C. J. decided, expressly, that a contract to pay, in a bill, could not be waived, and an *indebitatus assumpsit* resorted to. The Court, then, should have charged the jury in favour of the defendant, on account of the variance. It is matter of substance, that the proof should be *secundum allegata*.

As to the 3d, 4th and 5th points, it is plain, that a right of action, in the plaintiffs, never existed at all ; or, if it once existed, it has been discharged. The defendants were ap- prized of the assumption, by *N. Talcott*, who himself con- sidered it an assumption in his own right ; for the $6500

were charged to the defendants, at the time of giving the notes, and an account of the sale and assumption immediately transmitted to them. *N. Talcott* treated the matter in the same way, in the account which he opened between his house and the plaintiffs. He credited them with the boot, and charged them with the notes. The jury do not find that the defendants were ever liable ; and, it is plain, they never considered themselves so ; for they credited *N. Talcott* for the amount of his assumption. He then owed them about $13,000 ; but, being perfectly solvent, it is manifest that the notes were given in good faith. Suppose, then, that *N. & D. Talcott* were *strangers*—not *agents*, and there would be no doubt ; for wherever the party, at the time of the sale, agrees to take the notes of third persons, this is a part of the contract, and cannot be abandoned ; though if notes are received for a precedent debt, they will not operate as payment, unless received expressly in satisfaction. The reason is, because the party, having been once absolutely bound to pay the debt, the note is considered as mere security, and the debt is not satisfied by the security, unless that be paid. This distinction runs through all the cases.(*k*) In *Whitbeck* v. *Van Ness*, the agreement was not express to take the note at the plaintiff's own risque, but it was put upon *Ld. Holt's* doctrine, in the cases just cited from the 12*th Mod. Spencer*, J. says, in that case,(*l*) that it would " be perverting the manifest agreement of the parties, if we were to pronounce that the plaintiff did not take the note at his own hazard." In the same case, he pronounces the expressions used in *Johnson* v. *Weed and another*,(*m*) to be *obiter*, and unwarranted by authority. *Expressum facit cessare tacitum, et conventio vincunt legem*, are established maxims, and apply with peculiar force to the present case. The law of the cases, cited on the other side, is not denied, but they do not apply. The case of *Everett* v. *Collins* was at *nisi prius*, and, if opposed to us, it is well worth while to inquire how far it shall go against our own decisions. But it is enough to say, that in that case, the debt was a pre-existing one. Besides, the Judge puts his determination expressly on the ground, that

(*k*) *Clerk* v. *Mundall*, 12 *Mod.* 203. *Goverhour & Company*, &c. v. *Newman, id.* 241. *Lord* v. *Francis, id.* 408. *Whitbeck* v. *Van Ness*, 11 *John.* 409.
(*l*) *P.* 414, 15.

(*m*) 9 *John.* 310.

UTICA,
August, 1823.

PORTER
v.
TALCOTT.

(n) 15 East,
7.

(o) 15 East,
62.
(p) id. 64.

(q) 4 Taunt.
574.
(r) id. 580.

(s) Bull. N.
P. 130.

the check, being that of the defendant's servant, or agent, was equivalent to the note of the·defendant himself; and the cases referred to in *Selw. N. P.* (146, *note, Am. ed.* 1811,) all turn upon the distinction between a *precedent* and *subsequent* debt. *N.. & D. Talcott* are *third persons*, substituting their own responsibility for that·of the defendants. Nor can it make any difference, that the property has come to the defendants' hands ; it was so in all the cases cited. In *Emly et al.* v. *Lye*,(n) it was held, that the house receiving the money, did not vary the express contract, nor authorize the insisting on an implied one. But suppose *N. & D. Talcott* to have been the agents or factors of the defendants ; the case is still stronger in their favour. The plaintiffs acted with full knowledge of the relation between them, and had a right to elect which they would make their debtor. A class of cases in *England* are decisive of this point. In *Paterson et al.* v. *Gandasequi*,(o) Ld. *Ellenborough* says,(p) "I do not find any case, which decides, that where a person sells goods to an agent, with a knowledge of his principal at the time, and gives credit to the agent, he can recover against the principal." And in *Addison* v. *Gandasiqui*,(q) *Mansfield,* Ch. J. says,(r) "I left it to the jury to say, whether this was the common case of a merchant here, buying for his correspondent abroad, on which he charged a commission, or whether it was the case of a factor buying goods for his principal ; and they found for the defendant." An action will lie for or against a factor, in his own name.(s) The plaintiffs, before taking these notes, made full inquiry and took advice as to the responsibility of *N. & D. Talcott ;* and, indeed, all the circumstances of this case shew a credit given to them only. To bring it nearer to *Whitbeck* v. *Van Ness,* an indorser was *required* and *refused.*

It would be unjust to make the defendants liable. On the 31*st* of *December*, 1818, the accounts were closed, and this assumption allowed to *N. Talcott,* by the defendants. This was at a time when *N. & D. Talcott* were solvent. Now, by the delay and their subsequent insolvency, the defendants have lost the power to call the funds from their hands.

*T. A. Emmett*, in reply. We cite *Brown et al.* v. *Kewly et al.*(t) to shew that the hardship complained of by the defendants can make no difference in the result. That is a case quite as strong as the present one. The defendants here were all along supporting the credit of *N. Talcott* by remittances.

The contract in question was made and entered in the books of the defendants' agent, with sufficient formality to have satisfied the statute of frauds. Such a contract can never be controlled by parol evidence. In this memorandum, nothing is said about the notes. It was to prove *N. Talcott* agent, that we called him. We wanted him for no other purpose. So far and no farther is he properly our witness. As to all the other facts, to which he testifies, he was called by the opposite side, and becomes their witness; and so far as he contradicts the memorandum, or varies it, his testimony is inadmissible.

[Mr. *Slosson* here referred to a case, to shew that the memorandum was not conclusive. He said it was not the act of both parties ; and he cited *Mechanicks and Farmers Bank* v. *Smith.*](u)

*Emmett.* What makes the memorandum the more conclusive is, that a copy was transmitted to the defendants. They accepted the vessel, and confirmed the whole transaction. The notes were alluded to, at the time of the contract, merely as a collateral means of facilitating the credit. They were not regarded as a payment ; and with this accords the finding of the jury. But the very nature of the transaction creates a liability in the defendants. It is true, as asserted, that, by the law merchant, the factor of a foreign house makes himself personally liable. The object is, to give the creditor a remedy under the *English* law, if he choose to pursue it. But was this rule ever extended to a case where the law of *England* was, as here, the law of the countries, where both merchant and factor reside ? Granting this will not vary the case ; because, under that rule, the debtor may, at his election, proceed against the principal. The entry and memorandum, in the cases cited from

UTICA,
August, 1823.

PORTER
v.
TALCOTT.

(t) 2 Bos.
& P. 518.

(u) 19 John.
115, 123.

the *4th Taunt.* and *15th East,* shew credit given to the factor alone ; and from the finding of the jury, in those cases, it is plain, that an election was proved to consider the factor as the sole debtor.

As to the operation of notes taken upon a sale or exchange, and whether they are to be considered as payment or not, all the cases are resolvable into the question, whether they are agreed, to be received in payment, or what was the intent of the parties. But, according to the case of *Everett* v. *Collins,* the contract here, being equivalent to a contract with the defendants, these are the same as the defendants' notes, in the eye of the law. The note of the agent is the note of the principal. I deny, that because a note is given at the time of the contract, it is therefore a payment. *Modern Reports* are the very worst that could be cited to this point ; for though much the same doctrine may be found in *Ld. Raymond* and *Salkield,* yet these decisions were at a period when the nature of negotiable paper was but little understood. For proof of this, it is sufficient to remark, that they are regarded, in these cases, like any specifick article, agreed to be received in lieu of money. *Johnson* v. *Weed,*(v) contains the true sense of the *English* cases. *Whitbeck* v. *Van Ness,* goes upon the ground, that the plaintiff agreed to risque the note. In all cases where a note has been holden a satisfaction, it was a preexisting one, and was exchanged for the chattel, like any other article ; and not where a new note, growing out of the transaction itself, is given at the time of the sale. In such a case, it is a mere security for the price. In *Owenson* v. *Morse,*(w) it is said that the receipt of notes on a sale, will not operate as a payment, unless they are agreed to be accepted as such ; and in the case cited by my associate, from 6 *T. R.* the same doctrine is laid down. I do not consider this an antecedent debt ; but that case does not differ from this in principle ; it is only a stronger application of the *same principle.* In both cases, the jury are to find, whether there was, or was not, an agreement to receive the notes in satisfaction, and the liability is to be regulated according to the finding.

(v) 9; *John.* 310.

(w) 7 *T. R.* 60.

UTICA,
August, 1823.

PORTER
v.
TALCOTT.

The objections to the mode of declaring, are answered by properly understanding the liability of the parties. The defendants were liable, according to the cases, unless there was an express agreement to take the notes at the plaintiffs' risque. And again, when the notes were dishonoured, they were mere nullities, and ceased to be a part of the contract. The action was not commenced till the whole credit had expired. This consideration gives us a right to the general count for goods sold and delivered.(x) It is doubtful, whether our first and second counts can properly be called special ones ; but suppose they are, it is enough to state the consideration truly, as we have done, and then to set forth so much of the contract only as the breach relates to.(y) The counts which are here called special, may well be considered merely general counts in *indebitatus assumpsit*, on the exchange of vessels, in which it is enough to aver the indebtedness, and the non-payment of the money due, as the difference in value. *Lawes on Pleading*, 463, recognizes a count in general *indebitatus assumpsit* upon an exchange ; and *Cotterill* v. *Cuff*, cited from 4 *Taunt.* and *Felton* v. *Dickinson*, (10 *Mass. Rep.* 287,) import as much. This need not be called an exchange in the declaration. It is rather a mixed transaction, consisting partly in exchange, and partly in sale. The consideration which we gave was the *vessel*, which is *goods*. This we sold and delivered, and we are bound to state, in declaring, nothing more than that part of the contract, which is properly a buying and selling. In the case cited against us, from *Salkield*, it is said that exchange and sale are the same thing. " *Permutatio vicina est emptioni ;*" and that " in exchanging, both parties are buyers and sellers."

Blackstone says the same ;(z) and you may always set forth your contract, according to its legal effect. It is true, you may call it an exchange, in terms, as in 2 *Chitty's Pl.* 84. But the instructions, at the close of the precedent there, shew that you may also treat it as a sale.

(x) *Brooke et al.* v. *White*, 4 B. & P. 330. *Alcorn* v. *Westbrook*, 1 *Wils.* 115, 117. *Mussen* v. *Price*, 4 *East*, 147, 149. *Gordon* v. *Martin*, *Fitzg.* 302. *Kelley et al.* v. *Foster*, 2 *Bin.* 4. *Snyder et ux.* v. *Castor*, 4 *Yeates*, 353. *Sykes* v. *Summerell*, 2 *Browne's Phil. Rep.* 225, 227. *Miles* v. *Moodie*, 3 *Serg. & Rawle's Rep.* 211. *Felton* v. *Dickenson*, 10 *Mass. Rep.* 287.

(y) *Handford* v. *Palmer*, 2 *Brod. & Bing.* 359. *Cotterill* v. *Cuff et al.* 4 *Taunt.* 285. *Miles* v. *Sheward*, 8 *East*, 7.

(z) 2 *Bl. Com.* 446.

WOODWORTH, J. This was an action of assumpsit, to recover the sum of $6500, being the difference on exchange of vessels.

The plaintiffs declare, first, on a special agreement, whereby they exchange the brig *Emma* for the ship *Vigilant,* averring that the defendants promised to pay the plaintiffs $6500 to boot. The declaration, also, contains counts for goods sold, and the money counts.

It is contended, on behalf of the defendants, *first*, that the action for goods sold and delivered does not lie, the contract being a special one ; and *secondly*, that the contract proved, varies from that laid in the special counts.

I am inclined to the opinion, that the proof supports the general count for a sale. In *Blackstone*, 2 *vol.* 446, it is laid down, that " sale or exchange is a transmutation of property from one man to another, in consideration of some price or recompense in value. If it be a commutation of goods for goods, it is more properly an exchange ; but if it be a transferring of goods for money, it is called a sale. In the present case, the contract may be considered as partly an exchange, and partly a sale. Every thing relating to the exchange, having been executed, I perceive no legal objection against declaring, generally, for a sale, as to the residue ; such form of declaring is approved in 2 *Chitty* 35, *n.* (*e.*) The distinction taken is this, that where an agreement is executory, *indebitatus assumpsit* will not lie, until the terms of it are performed ; but when the contract is executed on the part of the plaintiff, he may declare generally. This doctrine is fully recognized in *Kelly* v. *Foster,* (2 *Binny*, 4 ;) and is supported by the cases of *Gordon* v. *Martin*, (*Fitzg.* 302 ;) *Alcorn* v. *Westbrook*, (1 *Wils.*117 ;) and in *Buller's Ni. Pri.* 139.

The case of *Brooke* v. *White*, (4 *Bos. & Pull.* 330,) is very much in point. The action was for goods sold and delivered. It appeared that they were sold at two months credit, to be paid for by a bill, at 12 months ; 14 months had elapsed when the action was commenced. It was held that no action could be maintained for goods sold, until the expiration of the period, at which the bill would become

UTICA,
August, 1823.

PORTER
v.
TALCOTT.

due. If the bill be not given, the plaintiff may bring an action on the special contract ; but after the expiration of the period of credit, it was no use to give the bill, for the party is then entitled to receive his money. *Heath,* Justice, observed, that he had always understood, that when a contract is executory, the party must declare specially ; but that when it is executed, he may declare generally. *Rooke,* Justice, took this distinction, as found in all the cases, that the plaintiff can only recover upon a special action, until the time of credit has expired. In the present case, the plaintiff had fully performed, by conveying and delivering his vessel ; the payment of $6500, which the plaintiff was to receive, in addition to the transfer of the defendants' vessel, alone remained to be performed : it was agreed to receive the notes of *Noah Talcott,* the agent ; they were given, and this action was not commenced until after the time of credit had expired. If the defendants are liable for this demand, it seems to me, the general count is supported by the proof given at the trial. (2 *Chitty,* 84, note (e.) *Mussen* v. *Price,* (4 *East,* 147.) But if this were otherwise, I think the count on the special agreement is substantially correct. The objection is, that no notice is taken of the agreement, to accept *Noah Talcott's* notes, nor are the times set forth, when they became payable. The same principle that will authorize a party to declare generally, after the money is due, will, I apprehend, allow him in declaring on the special agreement, to aver the non-payment of the money generally, without going into a particular statement of the manner and periods of payment. As to the manner of securing the money, there could be no breach as to that, for the notes were given as stipulated ; and the money having become due, why should a particular statement in the declaration be necessary ? If there had been a refusal to give the notes, or a prosecution been commenced, when a part only of the money was due, the count would have been defective ; it would then not correspond with the proof. The case, as now presented, is very different ; every thing has been performed, except payment of the money, to be given on the exchange. I fully concur in what was said by *Chambre,* Jus-

tice, in *Brooks* v. *White*, that the qualifications respecting the mode of payment, are introduced for the benefit of the purchaser, and during the time to which they relate, the sel- ler must sue on a special contract ; when that time is expir- ed, the money is actually due. The plaintiff has set out all the contract, that remains to be performed, and that is enough to entitle him to recover. In *Clark* v. *Gray & oth- ers*, (6 *East*, 564,) *Ld. Ellenborough*, who delivered the judgment of the Court, observes, that it is sufficient to state, in the declaration, so much of any contract, consisting of several distinct parts and collateral provisions, as con- tains the entire consideration for the act, and the entire act, which is to be done in virtue of such consideration ; and that the rest of the contract, which only respects the liquidation of damages, after a right to them has accru- ed, by a breach of the contract, is matter proper to be given in evidence to the jury, but not necessary to be shewn to the Court in the first instance, on the face of the record. The principle here stated will uphold the special count ; for the transfer of the plaintiffs' vessel, is the entire considera- tion for the act, and the non-payment of $6500 is the entire act to be done in virtue of such consideration. There is, then, no material variance. This objection cannot prevail. But it is contended that the plaintiffs elected to take *Noah Tal- cott*, the agent, as their debtor, and cannot afterwards charge the principals.

The plaintiffs treated with *Talcott*, as the agent of the de- fendants, and agreed to take his notes. The jury have found that there is no evidence of any agreement, or mutual un- derstanding, that the defendants were, or were not, bound to the plaintiffs for the amount of the notes. I think this find- ing warranted by the evidence. The question then is, whether on these facts the defendants are liable. The law is well settled, that a note given by the debtor for a prece- dent debt, is no payment of the original demand, unless it is expressly agreed to receive it in payment. (5 *John.* 68. 7 *John.* 311. 2 *John.* 455.) It is here contended, that the plaintiffs have elected to take *Noah Talcott's* notes, and thereby exonerated the defendants. The case of *Johnson* v.

*Weed,* (9 *John.* 310) is not an authority to prove, that a promissory note of a third person, for goods sold and delivered, is no payment, unless the vendor agrees to take it actually as such, because, it is evident in that case, the plaintiff did not intend to take *Townsend's* note at his own risk. In *Whitbeck* v. *Van Ness,* (11 *John.* 409,) on a review of all the cases, this doctrine seems to be settled, that if the vendor of goods receive from the purchaser the note of a third person, (the note not being forged, and there being no fraud or misrepresentation) such note will be deemed to have been accepted by the vendor in payment, unless the contrary be expressly proved. The inquiry then is, whether *Noah Talcott* is to be considered in the light of a third person, within the meaning of the rule ? he was an agent merely, and represented the defendants. In the case of *Everett* v. *Collins,* (2 *Campb.* 515,) it was held, that if a creditor prefer a bill of exchange, accepted by a stranger, to cash, he must abide the hazard of the security he takes. In that case, the agents of the defendant, who was the debtor, gave their check to the plaintiff, which was dishonoured ; it was held that the debtor was not discharged. *Lord Ellenborough* observed, the agents are not to be considered in the light of third persons, but as the defendant's servants. So here, the note of *Talcott,* then, is not the note of a third person, nor does it operate as payment, unless so agreed. It was supposed that the plaintiffs had elected to take *N. Talcott.* The case of *Patterson* v. *Gandasequi,* (15 *East,* 62) was cited on the argument. It undoubtedly proves, that if the seller elect to give credit to the agent, he cannot afterwards resort to the principal. It is stated in that case, as a fact, *that the goods were sold on the credit of the agents.* It is not so stated in the present case.

I am on the whole of opinion, that, as *Talcott* was merely an agent, and as there does not appear to have been any agreement not to look to the defendants, they are liable. This view renders it unnecessary to consider the application for a new trial, on the ground of newly discovered testimony. I will only observe, that if the plaintiffs' evidence was insufficient, the applicaion for a new trial ought to be gran-

ted, on the ground that there has been reasonable diligence, that the new evidence is material, that it has been discover- ed since the trial, and is not cumulative. If true, it proves an important fact, decisive of the controversy, and not made out at the trial. Neither is it to contradict the testimony of *N. Talcott ;* for he does not say, that he had never expressed to the plaintiffs an expectation that funds would be sent by the defendants, but that he has no recollection of that fact. The newly discovered evidence, therefore, would establish a fact, respecting which, Mr. *Talcott* has no recollection, There must be judgment for the plaintiffs.

SUTHERLAND, J.    This is an action brought by the plain- tiffs, to recover the difference agreed to be paid on an ex- change of vessels, made on the *5th* day of *December*, 1818. The exchange was made, on the part of the defendants, by *Noah Talcott*, whose authority is not questioned.    The dif- ference agreed to be paid to the plaintiffs was $6500, for which amount they took the notes of *Noah Talcott & Co.* which, having been dishonoured, in consequence of their fail- ure, this suit has been brought against the defendants.    The only question, upon the merits of the case, is, *whether it was a part of the contract of exchange, that the notes of Noah Talcott & Co. should be taken, by the plaintiffs, in pay- ment or satisfaction of the difference agreed to be given.* If it was, and if they were so received, then the plaintiffs have precluded themselves from the right of resorting to the de- fendants, which they otherwise would, unquestoinably, have possessed.

The jury, under the direction of the Judge, found spe- cially upon this point, " that, in the contract for ex- " change of vessels, it was agreed, that the notes of *N. &* " *D. Talcott* should be given for the difference ; that, at the " time of making the agreement, it was expressly declared, " by *Noah Talcott*, that he was acting as the authorized agent " of *Talcott* & *Bowers*, of *New-Orleans ; but that there is no* " *evidence of any agreement, or mutual understanding, that* " *the said Talcott* & *Bowers were or were not bound, to the* " *plaintiffs, for the amount of the notes of N. & D. Talcott,* " *in the event of their insolvency ;*" and this finding of the

jury is perfectly justified by the evidence, as stated in the case.

The case, then, stands thus : *Noah Talcott*, acting avowedly as the agent of the defendants, makes the exchange of vessels for them, and gives the notes of his house for the difference. Does the transaction carry upon the face of it the requisite legal evidence of an agreement, on the part of the plaintiffs, to take those *notes, as payment*, without the right of eventual recourse to the defendants ? I am clearly of opinion that it does not, within the reason or authority of the adjudged cases.

A distinction is sometimes taken upon this subject, which requires to be a little considered. It is this : that the note of a third person, if taken at the time of making the contract, is payment ; but, if given for an *antecedent debt*, it is not. Now I apprehend, that it is payment in neither case, unless it is agreed to be so taken ; and, if so agreed, it is equally payment when taken for an antecedent debt, as when taken for a debt contemporaneous with the agreement. In either case, the enquiry is the same—did the creditor agree to take it as payment ? and so are all the cases. In *Clerk* v. *Mundall*, (12 *Mod. Rep.* 203) Lord *Holt* says, " If *A* sell goods to *B*, and *B* take a bill, in *satisfaction* thereof, there, though the bill be never paid, *A* is discharged ; *because it is part of his contract, that B should take the bill*. So, in *Ward* v. *Evans*, (2 *Ld. Raym.* 930) Lord *Holt* again says, " The taking a note, for goods sold, is a payment, *because it was part of the original contract*." The case of *Owenson* v. *Morse*, (7 *T. R.* 64) turns upon this very point, and the language of Lord *Kenyon*, there, is very clear and explicit. It was an action of trover, for some articles of plate, purchased by the plaintiff of the defendant, and two questions were made : 1. Whether the plate had been delivered to the plaintiff : and 2. Whether he had paid for it. In either case, it was admitted, he could sustain the action. The facts, in relation to the payment, were these : *The plaintiff, at the time of the agreement, paid the price of the goods, in the notes of the Messrs. Shaws*, who kept a bank at *Southampton*. They failed, before the goods were sent home, and the de-

fendant refused to deliver them. Lord *Kenyon* says, "If the defendant had *agreed* to take the notes, *as payment*, and to run the risk of their being paid, that would have been considered as payment, whether the notes had or had not been afterwards paid ; and that is all that is proved, by the cases that have been cited. *But, without such agreement, the giving of such notes is no payment.*"

The case of *Johnson* v. *Weed* & *another*, in this Court, (9 *John.* 310) is precisely in point. *Johnson* sold the defendants goods, for which he agreed to take the note of *John Townsend*, which was delivered to him. *Townsend* failed, before the note fell due, and the plaintiff brought his action against the defendants, for goods sold and delivered.— Chief Justice *Kent*, before whom the cause was tried, charged the jury, "that, unless the plaintiff agreed to receive the note as payment, and to run the risk of its being paid, the mere taking of the note would not amount to a payment, if it turned out to be of no value ; and that, whether the plaintiff did or did not take the note in question, under such an agreement, was a matter of fact, for the jury to find." This was not the case of an *antecedent debt*. The note was actually taken, by the plaintiff, at *the time of making the contract for the goods*. But that was not considered sufficient evidence of an agreement, on the part of the plaintiff, to take the note in payment ; and the jury found that it was not so taken. The Court, in giving their judgment, say : "If it was a part of the original agreement, between the "parties, that the plaintiff should take *Townsend's* note, in "full satisfaction of the goods sold, so that he, and not the "defendant, should run the risk of the note, then, undoubt- "edly, the plaintiff has no right of action. But the fact, "whether such was or was not the agreement, was submitted "to the jury, and they have decided in favour of the plain- "tiff. The books all agree, that there must be a clear and "special agreement, that the vendor shall take the pa- "per, absolutely, as payment, or it will be no payment, if it "turns out to be of no value."

The cases of *Murray* v. *Gouverneur* & *others*, (2 *John. Cas.* 438) of *Herring* v. *Sanger*, (3 *John. Cas.* 71) of *Tobey*

v. *Barber*, (5 *John. Rep.* 68) of *Schermerhorn* v. *Loines* & others, (7 *John. Rep.* 311) are all cases of *antecedent debts*, in relation to which there is no doubt of the rule. And, if what is said by Lord *Kenyon*, in *Owenson* v. *Morse*, and by this Court, in *Johnson* v. *Weed* & others, be law, it is equally clear that the note of a third person, though taken at the time of making the contract, is no payment, *unless it was expressly agreed to be received in satisfaction, as payment*. The finding of the jury, in this case, establishes the fact, that there was no agreement, or mutual understanding, between the parties, that the notes of *N.* & *D. Talcott* should be *taken in payment of the difference*. It was a part of the contract, that they should give their notes, but that is not sufficient, unless they were to be given in *payment or satisfaction*.

In *Whitlock* v. *Van Ness*, (11 *John.* 409) there was no doubt, that it was the intention of the parties, that the vendor should take the note of *Dean*, at his own risk, and that such was the agreement ; and that it was perfectly understood that the vendee was not to be responsible, in any event. The proposition of the vendee was to buy the horse, if the vendor would take *Dean's* note for him, to which he assented. And *Spencer*, Justice, in delivering the opinion of the Court, puts it upon that ground. He says, " The single point for our determination, in this case, is, whether the note of a third person, *agreed to be taken in payment* for goods sold at the same time, is taken at the risk of the vendor of the goods, or of the vendee." If agreed *to be taken in payment*, it undoubtedly is payment; and that, in every case, whether of an antecedent debt or of a debt contracted at the time of giving the note, is the true and only point of inquiry.

But, in this case, the notes given were not, in strictness, the notes of a third person. They were the notes of the defendants' agent, avowedly dealing for them, within the limits of his authority. In such a case, the proof of the notes having been taken in payment, ought to be more clear and explicit than though they had been the notes of a stranger ; for the acts of an agent, when dealing for his principal,

and within the scope of his powers, are, in judgment of law, the acts of the principal. (*Everett* v. *Collins,* 2 *Campb.* 515.)

I am, accordingly, of opinion, upon the merits of the case, that the plaintiffs are entitled to recover.

It is not necessary to consider the objections taken to the special counts in the declaration, on the ground of variance between the contract, as stated and proved : for there is no doubt, that where there has been a special agreement, the terms of which have been performed, so that nothing remains but a mere duty to pay money, the money may be recovered under a count in general *indebitatus assumpsit*, without stating the special agreement. (*Mussen* v. *Price,* 4 *East,* 147. *Poulter* v. *Killingbeck,* 1 *Bos.* & *Pull.* 397. *Gordon* v. *Martin, Fitzg. Rep.* 302, S. C. *Bull. N. P.* 139. *Kelly* v. *Firlee,* 1 *Binney's Rep.* 4. *Miles* v. *Moodie,* 3 *Serg.* & *Rawle's Rep.* 211. *Felton* v. *Dickenson,* 10 *Mass. Rep.* 287.) In this case, the vessels had been delivered, and every part of the agreement was executed, except the payment of the money given as the difference. And the cases cited shew that this may well be recovered under a general count.

Upon the whole case, therefore, I am of opinion, that the plaintiffs are entitled to judgment, which renders it unnecessary to consider their application for a new trial.

SAVAGE, Ch. J. concurred.

Judgment for the plaintiffs.