### IN THE

## SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW-YORK,

### IN OCTOBER TERM, IN THE THIRTY-NINTH YEAR OF OUR INDEPENDENCE.

---

## WHITBECK against VAN NESS.

THIS was an action of *assumpsit.* Beside the general counts for goods sold, &c., and the common money counts, the declaration contained a count for the sale of a horse by the plaintiff to the defendant, for a note made by *Daniel S. Deane,* for 90 dollars, dated *August* 2d, 1808, payable six months after date, with interest, which note the defendant represented to the plaintiff as good, and the maker as responsible, when he, the defendant, knew that *Deane* was not, and that, in consideration of the premises, the defendant assumed and promised to pay for the horse the amount of the note. There was, also, a count for a horse sold and delivered for 90 dollars.

In *July,* some conversation passed between the plaintiff and defendant, relative to the purchase of the plaintiff's horse, at *Johnstown,* where the plaintiff lived. Afterwards, the defendant, who lived at *Rhinebeck,* desired a person, who was a witness in

A. offered to give B. 90 dollars for a horse, if he would take D.'s note payable in six months; B. took the note of D., payable to himself, and delivered the horse. The note was not paid, and in an action brought by B. against A., to recover the price of the horse sold, it was held that the note was payment, and that B. could not recover on the original contract of sale.

If a vendor of goods receive from the purchaser the note of a third person, (such note not being forged, and there being no fraud or misrepresentation on the part of the purchaser, as to the note, or the solvency of the maker,) such note will be deemed to have been accepted by the vendor in payment and satisfaction, unless the contrary be expressly proved.

the cause, to inform the plaintiff that the defendant would give him 90 dollars for the horse, if he would take the note of *Daniel S. Deane*, payable in 6 months, with interest. The plaintiff told the person that the defendant had said *Deane* was perfectly good, and that he would endorse the note. The witness replied that he had no instructions further than to make the offer he had done for the defendant. A few days afterwards, the plaintiff agreed to accept the offer, and the defendant sent the note of *Deane* for 90 dollars, dated the 2d of *August*, 1808, payable in 6 months, with interest. The note, except the signature, was in the handwriting of the defendant. The plaintiff, on receiving the note, delivered the horse to the witness, who sent it to the defendant, agreeably to his directions. Nothing was said, at the time of the delivery, as to the solvency of *Deane*, or at whose risk the note was to be taken.

It appeared that *Deane*, at the time the note was given, and since, was not a person of good credit or responsibility. Though it appeared he was sometimes trusted, yet his notes remained unpaid in the banks, at *Hudson*, and he was frequently sued; and one of the witnesses said *Deane's* note would not have sold for 25 dollars. Another witness did not think it would sell for 50 dollars.

The Chief Justice charged the jury that the plaintiff was entitled to recover for the horse, unless he had expressly agreed to take the note at his own risk, of which, in his opinion, there was no evidence. The jury found a verdict for the plaintiff for 118 dollars.

The defendant moved to set aside the verdict, and for a new trial.

*Van Beuren*, for the defendant. It has been a long-settled principle, that where a note is taken for an *antecedent* debt, it is no payment, unless the party receiving it agrees to take it at his own risk. A note given for a chattel purchased stands on a different ground, and the law presumes that the vendor of the chattel received the note in payment. The purchaser of the chattel, there being no warranty, runs the risk of soundness; and the seller, who receives the note, runs the risk of the solvency of the maker; for this is considered as part of the original contract. It was so decided by Lord *Holt*, in *Ward* v.

*Evans.** He says, " Taking a note for goods sold is payment, because it was a part of the original contract; but paper is no payment where there is a precedent debt; for when such note is given in payment, it is always intended to be taken under this condition, to be payment if the money be paid thereon in convenient time."

In *Johnson* v. *Weed,†* the fact was left to the jury, whether the plaintiff had agreed to receive the note in payment; but it appeared that the agreement was, that the defendant should endorse the note, and when it was objected to him that the note was not endorsed, he said that should make *no difference.* The case of *Markle* v. *Hatfield‡* will not aid the plaintiff; for the note was a forgery, and, therefore, a perfect nullity. In *Roget* v. *Merrit & Clap,§* the goods were not delivered, though a contract for the sale of them had been made.

*E. Williams,* contra, relied on the case of *Johnson* v. *Weed,* as conclusive on the question. In that case all the authorities were examined, and the point settled. In *Tobey* v. *Barber,‖* it was said to be a well-settled rule, that taking a note either of the debtor or a third person, for a preëxisting debt, is no payment, unless it is expressly so agreed. And in *Wilson* v. *Force,*** it was decided, that though the vendor of goods takes the note of a third person, payable at a future day, in payment, expressly at his own risk, yet if there was any fraudulent misrepresentation on the part of the vendee, as to the note, or the solvency of the maker, the vendor may resort to the original contract.(*a*)

In the present case, there was sufficient evidence of unfairness or fraud in the representation made by the defendant as to the solvency of *Deane.*

SPENCER, J. delivered the opinion of the court. The single point for our determination in this case is, whether the note of a third person, agreed to be taken in payment for goods sold at the same time, is taken at the risk of the vendor of the goods, or of the vendee. I put out of consideration the allegation of fraud, for it was not proved; and I also lay aside the plaintiff's allegations, that the defendant had promised to endorse the note, as there was no proof of that fact.

---

(*a*) See, also, *Chitty on Bills,* (2d edit.) 108, 109. *Kyd on Bills,* (3d edit.) 171, 172. *Puckford* v. *Maxwell,* (6 *Term Rep.* 53.)

NEW YORK,
October, 1814.

WHITBECK
v.
VAN NESS.

* 2 *Ld. Raym.*
928. 980. 12
*Mod.* 203. 241.
408 3 *Salk.*
68. 124. 1 *Ld.
Raym* 442. 1
*Esp Cases,*108.
447.
† 9 *Johns. Rep.*
310.

‡ 2 *Johns. Rep.*
455.

§ 2 *Caines' Rep.*
117.

‖ 5 *Johns. Rep.*
68.

** 6 *Johns. Rep.*
110.

The plaintiff relies on the decision of this court, in *Johnson* v. *Weed and another*. (9 *Johns. Rep.* 310.) I am compelled to say, that although I assented to that decision, and yet believe it to be correct, the reasoning of the judge,(a) who gave the opinion, went farther than I intended; and, as I understand those of my brethren who assented to the decision, farther than they meant to go. In that case, there was a contrariety in the evidence. The defendants' proof went to show, that it was part of the bargain, that *Townsend's* note should be taken in payment for the goods; whilst the evidence of the plaintiff showed, that they were to be paid for in cash; and that when *Townsend's* note, made payable to the plaintiff, was produced, the plaintiff observed, it ought to have been made payable to, and endorsed by, the defendants; to which one of the defendants replied, " it was late in the evening, and his vessel was ready to go to *Albany, and that it would make no difference.*" A new trial was properly refused in that case, because it was evident that the plaintiff did not intend to take *Townsend's* note at his own risk; nor could such have been the intention of the defendants, unless, indeed, they had a fraudulent design, which we were not authorized to suppose.

Here, the facts are entirely different; and nothing can be more manifest, than that both parties perfectly understood, that the plaintiff should take *Deane's* note at his own hazard. The case of *Johnson* v. *Weed* renders it necessary to review the various cases in the *English* courts, and in our own, that we may be perfectly understood.

In *Clark* v. *Mundell*, (1 *Salk.* 124. and 12 *Mod.* 203.) Lord *Holt* held, that if *A.* sells goods to *B.*, and *B.* is to give a bill in satisfaction, *B.* is discharged, though the bill is never paid, for the bill is payment; but otherwise, a bill should never discharge a precedent debt or contract. In *Bank of England* v. *Newman*, (1 *Ld. Raym.* 442. and 12 *Mod.* 241.) Lord *Holt* ruled, that " if a man has a bill payable to him, or bearer, and he delivers it over for money received, without endorsement, this is a plain sale of the bill; and he who sells it does not become a new security;" otherwise, if he had endorsed it. This de-

(a) It may be proper to observe, that throughout these reports, (except in a few instances,) where the opinion of the court is stated *per curiam*, it is always taken from the *notes* of the judge who delivers the opinion of the court, and with which the reporter is obligingly furnished.

cision of Lord *Holt* is cited by Chief Justice *Lee*, in *Howtop* v. *Hoare*, (3 *Atk.* 50.) with approbation. In *Ward* v. *Evans*, (2 Ld. *Raym.* 928.) Lord *Holt* reiterates the doctrine, that taking a bill for goods sold is a payment, because it was part of the original contract; but that paper is no payment, where there is a precedent debt. In 12 *Mod.* 408 and 517. he again asserts the same doctrine. In *Fydell* v. *Clark*, (1 *Esp. Cases*, 448.) Lord *Kenyon* held, that if a man, in the discount of notes, takes bills without endorsement, he must be considered as having taken the risk of payment on himself; that by not endorsing them, the defendant refused to pledge their credit, and the person receiving the bills took them on their own credit only.

The statute of *Anne* 5. 7. has interposed to regulate and fix the result of taking bills for a preëxisting debt. It provides, that the acceptance of bills for a former debt shall be a complete payment, unless due diligence is used to obtain payment, and the bill be protested. In the very recent case of *Emly* v. *Lye*, (15 *East*, 12.) *Bayley*, J. observes, "If a person buy goods of another, who agrees to receive a certain bill in payment, the buyer's name not being upon it, and that bill be afterwards dishonoured, the person who took it cannot recover the price of his goods from the buyer, for the bill is considered as a satisfaction."

It has been supposed, that the cases in 2 Ld. *Raym.* 929, 930. 1 *Salk.* 124. 7 *Term Rep.* 66. 3 *Johns. Cases*, 72. and 6 *Cranch*, 264. contain contrary principles. The cases from Ld. *Raym.* and *Salk.* have already been commented on. The case from 7 *Term Rep.* (*Owenson* v. *Morse*,) on examination, will be found to turn on the right to stop goods *in transitu.* *Owenson* purchased from *Morse* some plate, and paid for it in the notes of a third person. *Morse* retained the plate, to have *Owenson's* arms engraved, at *Morse's* expense. In the *interim*, the maker of the notes failed; and on refusal to deliver the plate, *Owenson* brought *trover*, and failed; the court holding, that the bargain was not so perfected but that the seller might stop the goods *in transitu.* In *Roget* v. *Merrit & Clapp*, (2 *Caines*, 120.) we adopted the same principle, that in an executory contract, the consideration having failed, the vendor had a right to withhold a delivery of the goods. The case in 3 *Johns. Cases*, 72. turned entirely upon the effect of accepting a note

for a precedent debt, and was decided in strict conformity to Lord *Holt's* distinction. The case of *Shuby* v. *Mandeville,* (6 *Cranch,* 264.) proceeds wholly on the effect of a creditor's taking a note from one of two joint debtors, and prosecuting it to judgment; and on his right, afterwards, to maintain a suit against both, notwithstanding his judgment against one. That case contains no principle applicable to the one before us.

In *Tobey* v. *Barber,* (5 *Johns. Rep.* 68.) the principle, that taking a third person's note for a preëxisting debt is not payment, unless so expressly agreed, is again recognised and enforced. In *Wilson* v. *Foree,* (6 *Johns. Rep.* 110.) a horse and chair was sold for a third person's note, and it was received in full satisfaction; but it appearing that the defendant knew that the third person was insolvent, but had represented him to the plaintiff as a man of property, we held, that as the basis of every contract was good faith, taking the note under a fraudulent misrepresentation was no payment.

In the case of *Markle* and *Hatfield,* (2 *Johns. Rep.* 459.) a counterfeit bank bill was taken in payment; and we held, that the payee did not assume upon himself the risk of forgery; the forged note being received upon the faith of its being genuine; but it is not to be doubted, that had the bill been good, and had the bank failed, and the parties been equally ignorant of the fact, that the decision would have been different.

These are all the cases referred to, which are supposed to countenance the opinion, that the defendant is liable for the price of the horse sold to him; and it appears to me, that they are perfectly reconcilable with the various decisions of Lord *Holt*.

The intrinsic circumstances of this case plainly show, that the plaintiff considered himself as taking *Deane's* note at his own risk. It was made payable to the plaintiff himself, and the defendant, by not endorsing it, or guaranteeing the payment, clearly declined pledging his own responsibility. The offer was made by the defendant's agent of *Deane's* note for the horse; the plaintiff took time to consider whether it was advisable to take *Deane's* note, and, after deliberation, and, we must presume, too, after inquiry, agreed to sell the horse for the note. It appears to me, we should be perverting the manifest agreement of the parties, if we were to pronounce that

the plaintiff did not take the note at his own hazard. To my mind, the nature and proof of this transaction furnish as decisive proof, that the plaintiff was to take the note at his own peril, as if it had been stipulated in express terms.

There must be a new trial, with costs, to abide the event of the suit.

New trial granted.