Ruffin, Chief Justice.
 

 — The complaint of the defendant’s counsel, that his Honor left the nature of the instructions given to the plaintiff to be determined by the jury, is probably well founded. On a similar question Lord Mansfield observed, in
 
 Macbeath
 
 v.
 
 Haldimand,
 
 1 Term Rep. 172, that there was no evidence proper for the jury; for as it consisted of written documents and letters not denied, the import of them was matter of law. But the error did the defendant no harm; for, upon looking into the letter of advice, we think the defendant was not instructed to sell for cash. A factor may sell on a customary credit, without directions to the contrary, or if left to his own discretion. A general power to sell implies a power
 
 to do so
 
 in the usual way at the place where the A “
 
 L
 
 sale is to be made. Willes Rep. 407. 3 Bos. & Pul. 489. The only special instruction here was as to the time of selling. The direction to
 
 “
 
 sell for the best price” means no more than the law enjoins if the consignor had been silent. is still to be inquired, whether the best credit price or the best cash price was intended; and as the letter left that open, it must depend on the judgment of the factor honestly exercised, and the usage of the trade. Upon the other question, of diligence, the Court is likewise of opinion for the plaintiff, upon the evidence given, and without any as to the state of the market, or whether the article was in demand, rising or declining in price. The factor must have some time to look out a purchaser; and a delay of fifteen days after the arrival of the vessel, without more, does not prove such negligence as will make the goods the factor's own, nor authorise it to be inferred.
 

 It is possible the Court may mistake some of the facts,
 
 *296
 
 w^ich are deemed material to the other parts of the case, as are not stated with perfect distinctness. It is most satisfactory to decide questions raised by the parties, when they are seen to grow out of the real facts of the controversy, rather than out of those put hypothetically; and this even when the necessity for the hypothesis arises from the fault of one of the parties, against whom, for that reason, the facts are to be taken most strongly.
 

 It appears in the case before us, that the defendant, residing in Newbern, was indebted to the plaintiff, residing in Baltimore, in the sum of two hundred and seventy-one dollars and ten cents; and being called on by an agent, in May, 1828, promised to make payment in cotton, or the proceeds thereof, which he was then shipping to Baltimore. The shipment was accordingly made, and disposed of for two hundred and sixty dollars and eighty-two cents, after deducting charges, which included a commission on the cotton, of which the proceeds amounted to ninety-seven dollars and fifty-eight cents, at four months from the 5th of June. The plaintiff filled other invoices for the defendant up to the 30th September, 1828; and the balance upon all the transactions up to that day, was one hundred and sixty-nine dollars and fifty-three
 
 cents
 
 due to the plaintiff which was increased to the sum of two hundred and sixty-seven dollars and eleven cents, by recharging to the defendant the sum of ninety-seven dollars and fifty-eight cents, upon the ground that Crook, to whom the cotton had been sold, had failed. To support that charge, it was absolutely necessary for the plaintiff to show, that he realised nothing from the sale, and that he had been guilty of no laches in selling to.a person of doubtful responsibility. This the plaintiff attempted to do, by evidence that he took in settlement for the price of the cotton, the note of another person, then in good credit, who had since become insolvent. It was not explicitly proved, when Jacobson gave his note, nor to whom it was made payable, nor why he gave a note for the debt of Crook. But it appeared iij evidence, that the note was given for the price of the cotton, and also of other articles of the plaintiff’s own, sold at the same time to Crook; and that on
 
 *297
 
 the 30th of September the plaintiff transmitted his account of sales, and his account current, to the defendant; and mentioned in the accompanying letter, that Crook had failed, and therefore he had charged the defendant with the ninety-seven dollars and fifty-eight cents, but that his creditors were proceeding against his effects, and expected to get something from them; for which, when received, he would give the defendant credit.
 

 Upon this case, the defendant moved the Court, under various modifications, to instruct the jury, that the plaintiff was liable, and ought to give the defendant credit for the value of the cotton. The Court refused the instruction, in any of the forms prayed; and gave an instruction, that if the note of Jacobson was afloat, and Crook gave it to the plaintiff for the cotton, the plaintiff was thus liable; but that if, in the negotiation between the plaintiff and Crook, Jacobson agreed to give his note, then the plaintiff was not liable, but the defendant must bear the loss. With the first part of the instruction, as a distinct proposition, the Court has nothing to do, in the present state of the case. The cause depends upon the correctness of the latter part.
 

 Upon that, the first inquiry is, how the facts are to be understood. It has been contended for the plaintiff, that Crook remained liable upon his contract of purchase; because the note of Jacobson, if payable to the plaintiff, did not extinguish it, unless it was agreed that it should be received in payment; and also, that it does not appear that it was payable to the plaintiff, and may have been made at the time to Crook, and by him immediately endorsed. From the terms of the instructions prayed and given, it is apparent that the note was not produced on the trial, as it ought to have been, by the plaintiff. Not that it was necessary, in the point of view taken in one of the defendant’s exceptions, in order to give the plaintiff his action by a tender of it; for if it had been destroyed, the plaintiff might be entitled to recover, if his case had otherwise been sufficient. But evidence of it was requisite as a part of the transaction of sale; and the note itself was the proper evidence of its contents, and we do not
 
 *298
 
 perceive how any evidence respecting it was received in its absence. No objection was made, nor can now be taken, as to the competency of that evidence. Yet, as the plaintiffhad the custody of it, every fair presumption that can arise from withholding it, is to be made against him, as to those parts of the contents which do not appear from the evidence given. Hence the responsibility of Crook . . , . r
 
 J ,
 
 upon the note itself, by endorsement or guaranty, or that ^ was Payable to Crook, is inadmissible. The plaintiff gave no evidence of it, and the fact is within his know-tedge, and the evidence in his power. By the terms of the instruction, the note was given on the sale, and was made under a stipulation of the contract; and, as it was not payable to Crook, must have been payable directly to the plaintiff. We cannot tell what was the pre-existent con-^deration for it, as between Crook and Jacobson; but the note itself was not pre-existent, but was made to the f°r the value of the cotton, in consideration, as we must suppose, of a debt which Jacobson owed Crook.
 

 Upon that state of facts, this Court does not concur in the instructions given in the Superior Court.
 

 We are of opinion that Crook, the purchaser, was not liable for the price of the cotton, but had paid it. If Jacobson’s note had been payable to him, and he refused to endorse it, and it was taken without his endorsement, it would be presumed to have been accepted in payment, there being no fraud.
 
 Whitbeck
 
 v.
 
 Van Ness,
 
 11 John. Rep. 409.
 
 Breed
 
 v.
 
 Cook,
 
 15 John. Rep. 241. But when, by agreement between the three, it was made to the plaintiff, it must be taken to have been in lieu of Crook’s responsibility, and as a payment, without any express declaration to that effect. Such a transaction speaks for itself. Even in the case of a previous debt, if the creditor, by agreement with the debtor, accept the note of a third person payable to himself, it is presumed to be in satisfaction, and extinguishes the original consideration, and may be pleaded in bar, or given in evidence under the general issue. Much more, when the seller agrees with the vendee, at the time of the sale, to take, and he does then take, for the price, the note of such third person.
 
 Tatlock
 
 v. Harris, 3 T.
 
 *299
 
 Rep. 180.
 
 Whitbeck
 
 v.
 
 Van Ness,
 
 11 John. Rep. 409.
 
 Wiseman
 
 v.
 
 Lyman,
 
 7 Mass. Rep. 286.
 
 Booth
 
 v.
 
 Smith,
 
 3 Wend. Rep. 66. If one buy a horse, and get his debtor to give his note to the seller, who accepts the maker as his debtor, — there being do deceit — no reason can be given why the vendor should be allowed to renounce the special contract, and recur to an original implied one for the price There is no room for implication; for the sale by one, and 1
 
 J
 
 the purchase by another, with the payment to be made by a third, are but parts of one entire contract, to which all those persons were parties, and in which the seller, by accepting the note without the vendee’s guaranty, assumes the risk. Now, we think the plaintiff had no right to discharge Crook, nor in any manner to defeat the defendant’s action against him. °
 

 . It is a general principle, that a sale by an agent creates a contract between the purchaser and the principal. It is true the factor need not disclose his principal, and if he does not he may sue in his own name, and the purchaser may also set off a debt of the factor. But the principal has the right to sue in his own name, or to receive the money.
 
 Golden
 
 v.
 
 Levy,
 
 1 Car. Law Repos. 528.
 
 Deebee
 
 v.
 
 Robert,
 
 12 Wend. Rep. 417. And when the principal has demanded payment from the purchaser, and takes steps to recover the debt, the factor ceases to be the creditor, and cannot subsequently receive the money, nor bring his action. Cowp. 255. 4 Camp. N. P. Rep. 195. This right of the principal raises a correspondent duty in the factor not to do an act, whereby the direct remedy of the former against the purchaser will be lost, and his debt extinguished. He cannot honestly deprive the owner the property of his claim against him who bought it. He ought not to desire to confine him to a remedy to be had through the factor alone, or upon a security under his exclusive control; and the rules of mercantile law ought mainly to aim at subserving good faith, by visiting responsibility upon acts tending to bad faith. Upon sound principle, it would therefore seem, that a factor ought to be personally liable for taking from a purchaser a security to himself, which extinguished the contract with the
 
 *300
 
 owner, constituted by the sale. No case in this state, nor in the English Courts, has been cited to the contrary. But one from a most respectable Court, in a sister state, has been adduced at the bar,
 
 Goodenow
 
 v.
 
 Tyler,
 
 7 Mass. Rep. 35, in which it was held, that a factor does not make the debt his own, by taking a note payable to himself, unless he refuse to deliver it to the principal on demand, or negotiate it, or otherwise appropriate it to his own use— it being proved to be the usage in Boston, for factors to sell on credit, and take notes in that form. It was there admitted, that, by the law of Massachusetts, a simple contract is merged in a negotiable note. If that be so, the decision, as a general proposition of law, does not seem to be reconcileable with the acknowledged rights of the principal, as it puts it in the power of the agent to disable him from prosecuting any direct remedy on them against the purchaser. Upon that ground, the Court was divided in opinion. The Judge who tried the cause, thought the factor liable, and that the most settled usage at Boston, could not change the law. Judge Sew all puts his opinion upon the usage alone; and the other members of the Court proceed upon the usage, together with the convenience of having a written evidence of the debt, which should be in trust for the principal, and might be obtained by him on demand. If, in the case before us, the note had been given by Crook, the decision in
 
 Goodenow
 
 v.
 
 Tyler
 
 would not be directly in point, because there is no evidence of the usage in Baltimore. But we do not deem it material to discuss the effect of that distinction, nor to contest positively the decision itself. The present case is essentially different in several respects. Here the note was not given by the purchaser, but by a third person ; and, in the next place, a distinct demand of the plaintiff was blended in it with that of the defendant. In our opinion, those circumstances make the plaintiff chargeable to the defendant — if each of them does not. To repel the force of the latter circumstance, the case of
 
 Corlies
 
 v.
 
 Cumming,
 
 6 Cowen, 181, has been relied on, in which it was held, that a factor does not make himself liable by taking the purchaser’s note to himself; nor by taking it for the whole price of several parcels
 
 *301
 
 of goods belonging to several principals; nor by giving up that note, and taking those of a third person, payable earlier, and endorsed by the original purchaser. In New York, a promissory note does not extinguish the original contract of sale, unless it be so agreed, either expressly, or as inferred from circumstances. It is upon that principle the judgment is founded; and it was said, the remedy of the respective principals against the purchaser, remained the same after the note was taken, as it was before. It might be difficult to reconcile that deduction with those decisions, in the same state, which make the production of a negotiable instrument, indispensable on the trial of the action on the original contract, in order that it may be delivered up.
 
 Hughes
 
 v.
 
 Wheeler,
 
 8 Cowen, 77. If the rule be correct, when the note is for a single demand, it may yet, for that reason, be inapplicable to one for two or more demands ; for in the latter case, the factor cannot rightfully deliver the joint evidence of both debts, to one of the several creditors, with authority to him to cancel it. But from that deduction, in
 
 Corlies
 
 v.
 
 Cumming,
 
 there is now no occasion to dissent; for, whether correct or not, the right of the principal to an immediate action in his own name, against the purchaser, is expressly recognised, notwithstanding the note for the benefit of two. But that cannot be here ; for Crook, who was the purchaser, was entirely discharged. The plaintiff not only left in the defendant no cause of action against the purchaser, but disabled himself from helping him to one. Nor could the defendant sue Jacobson. There was no contract, nor privity between them. Jacobson was not the purchaser; the case states expressly that Crook was. Jacobson was liable solely on his note, and not on the consideration of it; which did not enure to his benefit, but to that of Crook. It is said, however, that by applying to the plaintiff, the defendant could have obtained Jacobson’s note, which would have been equally beneficial to him; and this seems to have been the idea of his Honor, upon the reasoning in
 
 Goodenow
 
 v.
 
 Tyler.
 
 It would seem to us, that the right of the principal, is, at his own pleasure, to revoke the authority, and arrest the action of his factor, and to become his
 
 *302
 
 own receiver; and that "the factor incurs immediate responsibility by placing the business in such a posture, as gives to himself the control. It is an attempt to shift the power to the wrong hand, and to bring the principal into subjection ; which ought to make the wrong-doer answerable for the debt. But how could the defendant apply for this note ? He did not know of its existence. The plaintiff did not report Jacobson as the purchaser, nor his note as a security ; and in the state of the defendant’s information, he could not imagine that there was any thing to oppose his general right to look to Crook, or that he had to ask from the plaintiff the transfer of any note, much less that of a mere stranger to him.
 

 But from other facts of the case, we think it cannot be supposed, that if the defendant had, at any time before Jacobson’s failure, applied for the note, it would have been assigned to him. This conclusion is drawn from the circumstances, that a part of the sum secured in it, was for a debt due from Crook to the plaintiff, and the other part was not sufficient to cover the balance in account due to him, from the defendant himself. In each of these respects, the case differs from both of those cited for the plaintiff. This part of the transaction is open
 
 to the general
 
 objection of its tendency to impair the faith of distant correspondents in mercantile integrity, and to tarnish the character for fair and honourable dealing which distinguishes our merchants as a class. On the strength of that faith and character, men now entrust to each other, adventures for immense amounts, with a sense of perfect security, that the sales will be honestly made, with reference to the interest of the owner only, and without any other advantage to the agent than a just compensation for that service; and will be truly reported, and truly accounted for. It is going very far, for a factor to sell in a lump the goods of different principals, and to take one security in his own name for the prices. But it is much more suspicious and dangerous for him to sell a parcel of his own goods, at the same time with his principal’s, and to take one note for the whole. The owner generally resides at a remote place, and is unable to make inquiries personally, but is nearly restricted
 
 *303
 
 to the factor himself as the source of the knowledge of his transactions ; and it is easy to disguise the truth, and to deceive the principal, even when every thing is not exactly fair. Whatever tends to unfairness, ought, therefore, when discovered, to be reprobated. Factors owe it to their own interest and standing, to keep the transactions for others, distinct from those on their own account. If they mix them, it is impossible to escape suspicion; and quite a slight one is fatal to their business, and highly prejudicial to trade generally. When one bargain is made for the two parcels, there is a temptation and an opportunity, without great hazard of detection, to make that for the one, dependent upon the other; and the factor may be able to get a great deal more for his own, by taking a little less than the market price for the larger one of his principal. If this step were tolerated, the next would be to sell the goods of the principal, if the purchaser would liquidate a disputed account with the factor, or include in a security a doubtful demand. Courts ought not to countenance a mode of dealing, which leads to such consequences. But where one security is taken for the whole in the name of the factor, it seems clear to us that he takes it as his own. It is not exclusively in trust, or for the sole benefit of the principal, but in part for himself — and that appropriates it. In
 
 Goodenow
 
 v.
 
 Tyler,
 
 it was admitted by the majority of the Court, that if the factor appropriate to himself a
 
 note
 
 payable to him, he makes himself the debtor; and negotiating the note, or refusing to deliver it on demand, are put as instances of such appropriation. Another example must, we think, consist in taking a note, not wholly in trust for an employer or employers, but partly for himself. When taken altogether for another or others, it is presumed that he holds it for him, or those, who are entitled to the money, and will transfer it when requested; and therefore he was held not to be liable before request and refusal. After Jacobson became insolvent, the plaintiff might very willingly have handed over his note. But that does not determine the true question in the case, which is, did he intend, when he took it, to keep it as his own; or did he intend to transfer if, if asked ? It must be seen in such a case, that he did
 
 *304
 
 not mean to transfer it, at least not absolutely, and not unless the defendant would advance in cash, or render himself responsible for the part belonging to the factor. That condition he had no right to impose, nor to expect the defendant to comply with. But without a compliance, it is not to be supposed the plaintiff would have parted with the security, or even intended to do so. That is an appropriation. It is a strong presumption of reason, that the note was made payable to himself, because he had an interest in it; and therefore that he intended to keep it. It is tantamount to a refusal upon demand; for if demanded, it would not have been delivered. Hence, in
 
 Jackson
 
 v.
 
 Baker,
 
 reported in a note to 6 Cowen’s Rep. 183, it was held, that mixing a debt to the principal, with one to the factor in the same bond, gave the former immediate recourse against the latter, unless he offered to assign the bond. And in
 
 Floyd
 
 v.
 
 Day,
 
 3 Mass. Rep. 405, it was ruled, that if an agent to collect a debt, include it in a bond to himself for a debt of his own, his principal could not bring trover for the first security, or the last, but might recover in assumpsit, as if the debt had been paid to the agent. The presumption spoken of, is almost certainly true in fact, in this case. The defendant was indebted to the plaintiff, and made the shipment to him to pay himself. He therefore knew the destination of the proceeds ; and, although he was not, even after receiving it, confined to the consignment as a fund for his satisfaction
 
 pro tanto,
 
 yet the selling of the deposit, and taking a note for that debt, and another due to himself, affords almost as high evidence as could be given, that the plaintiff meant to change his debtors, and keep the note to himself; which is rendered conclusive, when we find that he passed the proceeds of the cotton to the credit of the defendant in account, and, of course, charged on his books the maker of the note as a general debtor to himself for the whole sum due on it. We should think, therefore, that the judgment ought to be reversed, were there nothing more in the case.
 

 But there are other circumstances in the accounts and correspondence, of concealment and misrepresentation, much to the discredit of the plaintiff; which are warnings
 
 *305
 
 of the danger of allowing the first false step of a person, who undertakes to act for another, intermingling his own interests, in a bargain, with those of his correspondent. It is the duty of a factor to be early in his intelligence, and distinct in his accounts, and above all, explicitly to state in them, every material fact, so that the principal may know the real state of his affairs. It has been before mentioned, that the plaintiff did not show any advice, at the time that he held Jacobson’s note as a security for the cotton. More than that, on the 30th of September, 1828, six days before the note fell due, he recharged the ninety-seven dollars and fifty-eight cents, to the defendant, upon the ground that Crook had become insolvent; and advised him of it, as if he had before reported him to be the purchaser, and as if he had become so upon his personal credit only. This was false in two particulars. Crook was not, and never had been the debtor, and therefore the debt was not lost by his bankruptcy; and the pretence to the contrary, denotes a consciousness that the dealings of the plaintiff were in violation of both law and usage. Again, it was false in withholding advice of Jacobson’s responsibility, and raising a delusive expectation of getting payment by attaching Crook’s effects. Why was Jacobson’s note kept out of sight
 
 1
 
 Obviously in the expectation that the defendant knew nothing of him, and would never discover his liability, but rest contented under the loss by Crook’s failure; and in that event, the plaintiff could pocket not only his own part, but the defendant’s also. It is no answer to this, that Jacobson also failed. The plaintiff’s letter and accounts, contain a plain declaration to the defendant, that he had no other security, but the contract of Crook, by himself; and if the plaintiff ever held the note for the defendant’s use, amount to a denial of it, if not to an actual conversion to his own use. — There must be a
 
 venire de
 
 novo.
 

 Per Curiam. Judgment reversed.