D. DEVLIN and others, Appellants, *vs.* A. T. CHAMBLIN, *et als.,* Respondents.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

The taking the note or security of a person, other than the debtor, is not *prima facie* evidence that the same was taken in payment of a *precedent* debt. There must be evidence of an express agreement to take such note in payment, in order to give it that effect, and the burden of proof is upon the debtor to show such agreement. But the rule seems to be different where a commercial instrument is given in payment of a contemporaneous sale, and the vendee is not liable on the instrument. In such case the presumption of law is that the vendee is not liable on the original indebtedness; but the acceptance by the vendor of goods, at the time of the sale, of a draft drawn by the vendee upon a stranger, and accepted by him, is not *prima facie* evidence that the same was taken as absolute payment of the purchase money. The question is one of fact for the jury to determine.

This action was brought by the Plaintiffs to recover the balance of $271.04-100, for goods, wares and merchandize sold and delivered.

The complaint alleges that the Defendants are and were, at the time therein stated, a partnership association of persons existing and doing business under the name of the " Minnesota Pioneer Guard."

Devlin et als. v. Chamblin et als.

That on or about the 8th day of February, 1859, the Plaintiffs sold to the Defendants, goods, wares and merchandize of the value and at the agreed price of $1771.04-100, and alleges that the Defendants have paid on the same the sum of $1500, and have refused to pay the balance.

The Defendants by their answer, each and every of them, deny that they were at any time members of a co-partnership, or engaged in any co-partnership business, or that they composed or were an association of persons existing or doing business under the name of the Minnesota Pioneer Guard, or any other name, as alleged in the complaint or otherwise.

They admit that they were members of a certain military company, composing a part of the Volunteer Militia of the State of Minnesota, known as the "Minnesota Pioneer Guard," and avers that no other relation, of any kind whatever, existed between them.

The answer then denies the sale and delivery of the goods, wares and merchandize mentioned in the complaint, to the Defendants, or any of them, and denies any promise or liability of the Defendants to pay for the same; and denies that they, or any of them have ever paid $1500, or any other sum, for or on account of such goods.

The answer avers that the goods sold by the Plaintiffs, and referred to in the complaint, consisted of certain military uniforms that were furnished by them for the individuals composing said military company, known as the Minnesota Pioneer Guard, and that the Plaintiffs sold all of said goods, wares and merchandize mentioned in the complaint, for and in consideration of two certain acceptances of the banking house and firm of Caldwell & Co., then doing business in the city of Saint Paul. The first acceptance being for the sum of $1500, and the second for the sum of $271.04-100, which acceptances the Plaintiffs took and received in full payment and satisfaction for said goods.

The Plaintiffs in their reply deny that the two acceptances of Caldwell & Co. were received by them in payment, but allege that the acceptances were given to and received by the Plaintiffs as collateral security for the payment of the price of the goods.

The evidence on the part of the Plaintiffs consisted of the deposition of Jonathan Ogden, one of the Plaintiffs, and by which it appears that on the 8th of February, 1859, the Plaintiffs sold the uniforms for the Pioneer Guard to Captain H. H. Western, amounting to $1289.04.

That on the 19th of February, 1859, they sold Captain Western the military overcoats for the company, amounting to $482, making an aggregate bill of $1771.04-100.

That previous to the delivery of the goods, and on the 19th of January, 1859, Captain Western gave the Plaintiffs his drafts, accepted by Caldwell & Co., January 4th, payable seven months from dates of acceptance, for $1500.

That afterwards, on the 10th of March, Captain Western gave the Plaintiffs his second draft, accepted by Caldwell & Co., on the 19th of February, payable six months from the date of the acceptance, for $271.04, that being the balance due upon the whole purchase.

This witness testifies in his deposition that the whole contract of sale was made with Captain Western, at the Plaintiffs' store in New York, and the goods sent as ordered by Captain Western, and to his address; and that none of the other Defendants were present at the time of the purchase.

This witness also testifies that the drafts accepted by Caldwell & Co., were not received in payment for the goods, but were received by the Plaintiffs as collateral security, to secure the payment for the goods.

But in answer to the third cross interrogatory the witness produces a transcript from the Plaintiffs' ledger of the entries of these accepted drafts, by way of credits at the time they were received.

The credit entry upon the ledger is in the following words :
" Jany. 19. . ' Cr.'   By H. H. Western's (Capt. Minnesota
              " Pioneer Guard) draft on Caldwell & Co., and
              " accepted by them January 4th, at 7 mos., due
              " Aug. 7, on ac.   $1500.00."

Points and Authorities of Appellants.

I.—The Court was right in refusing to charge as Defendant

requested, that the delivery of the draft was presumptive evidence of payment.

By presumptive evidence of payment is of course meant a fact which in the absence of other evidence would be conclusive evidence of the payment, or in other words, would be payment.

Such is not the law—the presumption is the other way. *Tobey vs. Barber*, 5 *Johns.*, 68-72; *James vs. Hackley*, 16 *Johns.*, 273; *Alcock and others vs. Hopkins*, 6 *Cush.*, 485; *Lyman vs. U. S. Bank*, 12 *How.*, 225.

II.—The Court did not err in holding or charging that the delivery to and acceptance by the Plaintiffs of the draft was no evidence of payment, and that the *onus* was on the Defendants to prove affirmatively by other evidence that the Plaintiffs received it as payment. 1 *Greenleaf on Ev., sec.* 33; *see also on Presumptions, sec.* 14. Presumptions of fact, on the contrary, are those where the conclusions to be drawn from the facts proved are left to the judge or jury trying the case. *Sec.* 44; and from which the law draws no conclusion.

Now we find, on looking at the law of this case, that from the mere fact of the delivery to and acceptance by the Plaintiffs of the draft, and in the absence of any other evidence, the law presumes that it was only conditional payment. In other words, that fact alone is *prima facie* evidence that it was taken as conditional payment. *See cases cited under point first.* The law even goes further than that, and says that if at the time of taking the draft or note, a receipt is given speaking of the " transaction as payment, or even payment in full, it will be interpreted as conditional payment to be in full when paid." 24 *American Lead. Cases*, 246, *and cases cited.*

III.—The Defendants then claim there was error in the charge of the Court and put it upon a different ground from that on which the Court below granted a new trial.

They first claim that the giving a negotiable note, in consideration of a simple contract debt, is of itself a discharge of the debt, or at least *prima facie* evidence of the same, and cite several Massachusetts cases, that of 2d *Metcalf*, 173, referring to all the others. But in this view of the law, Massachusetts, and some other New England States, stand alone;

and the course of decision of late in those States is tending the other way. *See* 2 *Amer. Lead. Cases, p.* 250. The great weight of authority is the other way. 2 *Amer. L. C.* 243, *and cases cited.*

The respondents think that the Court "overlooked the well settled distinction between a purchaser giving his own note for the price of goods purchased and the note or accepted bill of the third persons; while in New York the former is held as no evidence of payment, the latter is everywhere regarded as a *prima facie* evidence of payment." The respondents have misapprehended the distinction. It really is this: It is everywhere admitted (except in parts of New England) that taking the note either of the party himself or a third person, for a precedent debt, is not *prima facie* evidence of payment, but on the contrary it is *prima facie* presumed to be conditional payment merely. 2 *Amer. L. C.,* 246, *and cases cited.*

While the earlier New York cases held that in case of the giving of the note of the debtor only, it was conclusively presumed to be conditional only, and that it could not be considered payment. 2 *Amer. L. C.,* 248; *Cole vs. Sackett,* 1 *Hill,* 516; *Waydell vs. Tuer,* 5 *Hill,* 448. And that continued to be the law of New York till the last named case was reversed in the Court of Errors. 3 *Denio,* 510. So that in regard to precedent debts the law would seem to be clear that the taking of a note even of a third party is *prima facie* conditional payment only, and not absolute unless such is proved to be "the clear and undoubted intention of the parties."

IV.—Another point raised by the respondents is that there is a distinction between giving a note for a precedent debt and giving it for the price upon the purchase of the property, and claims that this draft was given at the time of the purchase.

*a.* The fact, however, is otherwise, and the draft was not given till after the purchase and after the Defendants had become liable to pay for the goods.

*b.* The most that Defendants could claim was, that it was a question for the jury on the evidence to say whether the draft was delivered at the time of the sale, and to request the Court to charge that if they so found the fact, the presumption would

then arise that it was payment. But by their request they make it incumbent upon the Court to decide that the draft was taken at the time, instead of "furnished afterwards."

*c.* But even were the draft taken at the time, the charge would be correct.

While we admit that the giving a note of a third party at the time of a purchase is *prima facie* evidence of an agreement that the note should be payment, yet it is undoubted that this effect of its operating as payment cannot be ascribed to it as matter of law, and apart from the agreement of the parties. 2 *Amer. L. C.*, 263, *and cases cited ; Olcott vs. Rathbone*, 5 *Wend.*, 491; *Frisbie vs. Learned*, 21 *Wend.*, 451-2; 2 *Amer. L. C.*, 247; *Whitbeck vs. Van Ness*, 11 *Johns.*, 411; *Noel vs. Murray*, 3 *Kernan*, 168; *Monroe vs. Hoff*, 5 *Denio*, 360; *Butler vs. Haight*, 8 *Wend.*, 535; *Alcock vs. Hopkins*, 6 *Cushing*, 490; *Gerrano vs. Wilson*, 8 *Cushing*, 424.

V.—On general principles there is no reason why such a draft should be any evidence of payment. The liability of the Defendants is precisely the same on the original consideration, or on the draft. In either action the draft must be produced, and in either action the Defendant can get up any defence he may have. In the case at bar, the Defendants have drawn the draft and are liable on it, as testified to by their own witness, Capt. Western. It is difficult to imagine how the Defendants could suppose that they escaped liability when they made such a draft, or at least of all, how they could suppose or intend that the Plaintiff should so understand the contract, but the presumption is most natural that it was given and received as additional or collateral security.

Much is said by Defendants about the exhibits in the case as showing that the Plaintiff received the draft as payment ; but the fact is that the exhibit merely shows that the draft was credited as a " full settlement," not payment, or in other words full liquidation, for the purpose of balancing books.

And again the question on that evidence was for the jury, the Defendants by their request and exception raising the simple question whether the taking of the draft by itself and aside from any exhibits, was *prima facie* evidence of payment.

vol vi.—60

We have already seen that it was not; first, 'because not taken at the time of the sale, and second, because the Defendants being liable thereon it was *prima facie* taken at the risk of the vendee.

Points and Authorities for Respondent.

I.—The Court below erred upon the trial in overruling the motion made by the Defendants' counsel, and refusing to dismiss the action after the Plaintiffs had closed their evidence and rested.

1. Because the partnership and business association of the Defendants was denied, and in issue, by the pleadings, and no evidence was given upon the trial tending to prove such allegation in the complaint, and without which the Plaintiffs could not recover.

2. Because there was no evidence tending to prove that Capt. Western had any authority from the Defendants to purchase the goods in question, or to contract any legal liability to bind the Defendants.

The fact that the Defendants were members of a volunteer militia company gave them no legal power to contract or to be contracted with as such, and the fact that Capt. Western happened to be the captain of that military company, conferred no authority upon him to contract liabilities on behalf of the company, for clothing or anything else, and the evidence showed that the sale and delivery of the goods was made to Capt. Western, and not to the Defendants.

II.—The first instruction which the Defendants' counsel requested the Court to give to the jury, was correct in law, and the Court erred in refusing the same, viz. :

" That the delivery to and acceptance by the Plaintiffs of the negotiable accepted draft, due at a future time, was, in the absence of any other testimony, presumptive evidence of payment."

III.—The second instruction which the Defendants' counsel requested the Court to give to the jury was also correct, and the Court erred in refusing to give the same as requested, that is,

"That the *onus* of proof was upon the Plaintiffs to show that the accepted draft, so received by them, was not received in payment."

IV.—The Court erred in instructing the jury on the contrary, "That the delivery to and acceptance by the Plaintiffs of the draft accepted by Caldwell & Co., was no evidence of payment, and that the *onus* of proof rested upon the Defendants to prove affirmatively by other evidence that the Plaintiffs received it as payment.

These rulings and instructions were all against the Defendants and were clearly erroneous.

In Massachusetts the Supreme Court hold, that a negotiable note given in consideration of a simple contract debt, is a discharge of the contract. 5 *Mass., p.* 301, *Thacher vs. Dinsmore*; 6 *Mass., p.* 145, *Maneely vs. McGee, et al.*; 12 *Pick., p.* 268, *Wood vs. Badwell et al.*; 2 *Metcalf, p.* 173, *Ilsley vs. Jewett*; *Edwards on Bills and Notes, p.* 195; 5 *Wend., p.* 490, *Olcott vs. Rathbone*; 21 *Wend., p.* 45 *and* 452; *Trishe vs. Larned*; 11 *Johns., p.* 409, *Whitlock vs. Van Ness*; 8 *Cow., p.* 78, *Hughes vs. Wheeler*; 3 *Wend., p.* 67, *Booth vs. Smith*; 2 *Am. Leading Cases, p.* 185-86; 2 *Greenleaf's Ev., p.* 511, 513, *sections* 519, 523, *and cases there cited.*

In these instructions to the jury the Court evidently overlooked the well settled distinction between a purchaser's giving his own promissory note for the price of goods purchased, and his giving the note or accepted bill of third persons.

While, in New York the former is held to be no evidence of payment, the latter, the giving of the negotiable note or bill of third persons for the price of property purchased, is everywhere held to be *prima facie* evidence of payment, and that it was received as payment, thereby placing the *onus* of proof upon the party receiving it to show that it was not received as payment, or intended by the parties so to operate. The distinction is also clearly preserved in all the cases between the giving of a note or bill to settle an antecedent debt already contracted, and the giving of a note or bill for the price upon the purchase of property.

In the former case the liability or debt of the debtor has already accrued and become fixed, and therefore does not depend upon the terms of a new contract.

But in the latter case the delivery of the note or bill for the price of the property purchased, and its receipt by the vendor, is presumptively a part of the terms of the contract of the purchase, and the Courts so regard it; and say that the legal intendment is, that it was received as payment, yet this presumption is liable to be rebutted by other proof from the party receiving it, that it was not received as payment, but as collateral.

All the cases agree that the payment or delivery by the vendee to the vendor of the negotiable note or bill of third persons has the same effect and is like the payment of any other chattels of value; the law presumes that it was the mode of payment agreed upon, and that it was given and received as such.

The negotiable acceptance of reputed solvent bankers has an intrinsic commercial value in the hands of the holder; it readily circulates in the commercial world by its delivery; the drawer has parted with its equivated value at the time, and placed it beyond his control; the holder has obtained the legal liability of the acceptors in a negotiable form, which may be readily transferred from hand to hand by delivery. Its payment does not depend upon the will of the drawer; the holder has the liability of the acceptors, and it is beyond the control of the drawer.

The delivery of the bill to the vendee might or might not be a payment in fact depending upon the intention and agreement of the parties at the time it was received. But it was *prima facie* payment; the legal intendment is that it was received in payment; and the *onus* is with the holder to rebut this presumption.

Therefore the Court clearly erred in instructing the jury in this case, "that the delivery to and acceptance by the Plaintiffs of the draft accepted by Caldwell & Co., was no evidence of payment, and the onus of proof rested upon the Defendants to prove affirmatively by other evidence that the Plaintiffs received it as payment."

And the material prejudice to the Defendants of this instruction is apparent from a glance at the evidence.

The witness Ogden, whose deposition was read on the part of the Plaintiffs, testified that the accepted draft was not re-

ceived in payment but as collateral security ; while the witness, Capt. Western, on the part of the Defendants, testified that the draft was delivered to and received by the Plaintiffs in payment and not as security.

There were no other witnesses to this point, therefore the evidence given upon the trial by the witnesses was equally balanced, and the instruction of the Court turned the balance in favor of the Plaintiffs, and left the jury no alternative but to find a verdict for the Plaintiffs.

The Court below became satisfied that these instructions were clearly erroneous, and granted a new trial.

ALLIS & PECKHAM, Counsel for Appellants.

SANBORN & LUND, and M. E. AMES, Counsel for Respond'ts.

*By the Court*—ATWATER, J.—This was an action brought by Plaintiffs below (here Appellants,) to recover a balance due for goods and merchandise sold the Defendants, amounting to $271.04. The Defendants pleaded payment by an accepted draft on Caldwell & Co. of St. Paul. The Plaintiffs replied that the same was taken only as collateral security, and not as payment. This was the principal issue raised, and the only one which it is deemed material to notice.

There was a jury trial, and a verdict for the Plaintiffs. The Defendants move for a new trial on a case, which motion was granted, and from that order the Plaintiffs appeal.

The Defendants, among other things, requested the Court to charge the jury that the *onus* of proof was upon the Plaintiffs to show that the accepted draft so received by them was not received in payment. The Judge refused so to charge, and on the contrary then instructed and charged the jury that the delivery to and acceptance by the Plaintiffs of the draft accepted by Caldwell & Co. was no evidence of payment, and that the *onus* of proof rested upon the Defendants to prove affirmatively, by other evidence, that the Plaintiffs received it as payment. The Judge who tried the cause thinks the case as settled shows an error in fact, and that the instruction to the jury was not as above stated. But that as he can-

not be positive, he grants a new trial, as if the charge was, as above stated, it was in his opinion erroneous.

The question has been very much discussed as to what constitutes presumptive evidence of payment in this and analogous cases, and the whole question is very fully examined in *2d Am. Leading Cases, p.* 170, *et seq.* It will be seen that the authorities are somewhat at variance, but without entering upon any discussion of the question here, I think the weight of authority is to the effect that the taking the note or security of a person other than the debtor, is not *prima facie* evidence that the same was taken in payment of a *precedent* debt. There must be evidence of an express agreement to take such note in payment, in order to give it that effect, and the burden of proof is upon the debtor to show such agreement.

But the rule seems to be different where a commercial instrument is given in payment of a contemporaneous sale, and the vendee is not liable on the instrument. In such case the presumption of law is that the vendee is not liable on the original indebtedness. In the case at bar, the vendees have made themselves parties to the instrument given to the vendor, the draft on Caldwell & Co. having been drawn by Capt. Western, President of the Pioneer Guards, and in his evidence he swears that he had authority to draw the drafts as Captain of the company. I have examined the authorities with care to ascertain whether in such case there is any legal presumption that the instrument was taken in payment, and although there is some uncertainty in the language used in some of the cases, I think the weight of authority is clearly against such presumption.

The case of *Whitbeck vs. Van Ness,* 11 *John.,* 409, is cited by Respondents' counsel, and is a leading one in this class of cases. By reference to that case it will be seen that the vendee not only was not a party to the note given in payment for the horse, but the evidence showed that he did not intend to render himself liable on the note or in any other manner. Spencer, J., in reviewing the English authorities cited in that case, refers to the *Bank of England vs. Newman,* 1 *Lord Raymond,* 442, *and* 12 *Madison,* 241, in which Lord Holt

ruled, "that if a man has a bill payable to him, or bearer, and he delivers it over for money received, without endorsement, this is a plain sale of the bill ; and he who sells it does not become a new security ; otherwise, if he had endorsed it." In *Fydell vs. Clark*, 1 *Esp. Cases*, 448, it was held, that " if a man in the discount of notes, takes bills without endorsement, he must be considered as having taken the risk of payment on himself ; that by not endorsing them, the Defendant refused to pledge their credit." And in *Emly vs. Lye*, 15 *East.*, 12, it was held that " if a person buy goods of another, who agrees to receive a certain bill in payment, the buyer's name not being upon it, and that bill be afterwards dishonored, the person who took it cannot recover the price of his goods from the buyer, for the bill is considered as a satisfaction." And the Justice further remarks in the case of *Whitbeck vs. Van Ness*, that " the intrinsic circumstances of the case plainly show that the Plaintiff considered himself, as taking Deane's note at his own risk. It was made payable to the Plaintiff himself, and the Defendant, by not endorsing it, or guaranteeing the payment, clearly declined pledging his own responsibility." From all which I think it is manifest that the Court not only did not decide that where the debtor's name is on the instrument, he cannot be held for the original consideration, but the inference is strongly to the contrary.

In *Olcott vs. Rathbone*, 5 *Wend.*, 490, it is claimed that the Court decided that " the general principle is that a bill or note is no satisfaction of any demand for which it has been given ; it is only *prima facie* evidence of payment." This language it is true appears in the opinion of the Court in that case as a quotation from some author, (*Bayley on Bills* I think,) but neither from the syllabus nor the opinion does any such point appear to be decided in that case, but that where a creditor had received the check of a third person in payment of a precedent debt, which check was dishonored, the creditor might recover on the original consideration.

The case which most strongly supports the view taken by the counsel for the respondents, is that of *Frisbie vs. Larned*, 21 *Wend.*, 450, in which it is stated in the syllabus, that " the acceptance of the note of a third person from one of the mem-

bers of a firm, endorsed by him, together with the payment of the balance of the account against the firm in cash, is an accord and satisfaction of the demand against the firm ; there being no agreement that such note was received merely as collateral security." In that case the note of the third party was endorsed by *one* of the members of the firm only, so that it presents a somewhat different state of facts from the case at bar. But the Court say that " where the note of a third person is transferred by the debtor to and taken by the creditor, and credit is given for it as a payment, the effect is the same as the acceptance of a horse, or other chattel on the same terms. The simple contract of sale or claim on one side, and a promise to pay by the vendee or debtor, is departed from; a new and distinct contract is made and new relations arise out of it. True the security may still be collateral, but independent of proof affirmative that it is so, I think the intendment should be that the security was received in satisfaction." But that these remarks are mere *dicta*, not necessarily called for in the decision, is manifest from the very next sentence, in which the Court says that "it is not necessary, however, to go so far in this case ; for here is express proof that the note was intended to operate as a satisfaction ; there was an endorsement credited as in full, and afterwards extinguished by a bond and judgment." And further, "above all, the evidence is quite too strong for the presiding judge to say, as he did virtually in this case, that there was not evidence even to go to the jury." And those of the authorities cited in that case, (to which I have had access,) to show that the transfer of the note operated as payment, clearly do not hold that the giving of a draft, drawn by the debtor himself, is presumptive evidence of payment for goods purchased, so that the vendor must rebut the presumption in order to recover on the original consideration.

*Edwards on Bills, p.* 195, states that " when a vendor, on a sale and delivery of goods, receives from the vendee the note of a third person for the price, the presumption is, that he takes it in payment; especially is this so where he gives a receipt for the note in full for his bill." But he also states on the following page, that "any act, such as indorsing or guar-

anteeing the note which shows that the purchase was not made on the faith of the note delivered, will rebut the presumption of payment." It would seem that the drawing of a draft should be regarded at least as strong evidence to rebut the presumption that the same was taken in payment, as an endorsement.

In *Booth vs. Smith*, 3 *Wend.*, 66, it was held "that the acceptance in full satisfaction by a creditor, of a note of a third person for the whole amount due on a previous note given by his debtor, is an extinguishment of the original consideration." The difference between that case and the present, is apparent without comment. And in *Noel vs. Murray*, 3 *Ker.*, 168, a note of a third person was given on sale of goods, on which the vendee's name did not appear, and a receipt in full was given for the goods sold. And in *St. Johns vs. Purdy*, 1 *Sand.*, 9, the note of a third person given by the debtor, was held as payment, on the ground that there was explicit evidence to show that the creditor had so agreed to receive it.

In none of the cases cited, therefore, (save those from Massachusetts Reports) do I think the doctrine can fairly be deduced, that the acceptance of a draft by the vendor of goods at the time of sale, drawn by the vendee upon a stranger and accepted by him, is to be deemed *prima facie* evidence that the same was taken in absolute payment of the purchase money. On the contrary, there are several authorities where the opposite doctrine is held, and I think supported by the better reason. In *Johnson vs. Weed*, 9 *John.*, 310, where the vendor of goods took the note of a third person in payment and gave a receipt in full for the debt, but remarked that it should have been endorsed by the vendee, to which the latter replied that it made no difference, the Court held that it was a question of fact for the jury to determine at whose risk the note was to be. And in 2 *Amer. L. C.*, 187, after discussing the effect of taking bank bills as payment, it is stated that there is much less reason for supposing that payment for a contemporaneous sale in the bills or notes of an individual is absolute, than where it is made in bank notes; and it would seem that this effect cannot be ascribed to it as a matter of law, and apart from the agreement of parties. The

cases fully establish that in the absence of such an agreement, the vendor may sue for goods sold and delivered, when the name of the vendee is on the instrument, and it is dishonored by the party primarily liable for its payment; citing *Hickling vs. Hardy*, 7 *Taunton*, 313; *Brower vs. Keewly*, 2 *Bos. & Pul.*, 318; *Wright vs. The First Crockery Ware Co.*, 1 *N. H.*, 281; *Jones vs. Savage*, 6 *Wen.*, 658. And in *Monroe vs. Hoff*, 5 *Denio*, 369, the guaranty of the purchaser was held to rebut a presumption which otherwise would have arisen, that the note guaranteed had been taken as absolute payment of the purchase money. In such cases the debt is suspended, not satisfied; and the only difference between them and those in which the paper given in payment does not bear the name of the vendee, is that the absence of the right of recourse on the instrument may justify an inference that it was not intended to arise on the consideration. But the whole question would appear to be one of fact for the determination of the jury, rather than of law for the Court; and as the ordinary understanding in contracts of sale is, that the vendor shall, in some way or other, get his money, the burden of proof ought to lie on those who seek to show that he agreed to be satisfied with something less. 10 *Vesey*, 204; *Exparte Blackburne; and Ward vs. Evans*, 2 *Ld. Raymond*, 928.

A further argument in support of this doctrine is derived from the construction which is put on an agreement to take commercial securities in payment for a contemporaneous sale, in cases where the securities are not delivered. In such circumstances it is well settled that *indebitatus assumpsit* will lie for the purchase money, at the period when the bill would have reached maturity had it been delivered. It is difficult to see on what principle this is allowed in such cases, and not permitted where the bill has been delivered. The presumption is as strong in the one case as in the other, that it was the intention to take the bill in payment.

From the foregoing authorities it will be seen that, upon a contemporaneous sale of goods, where the vendor receives commercial paper upon which the vendee's name appears in form that may render him liable, the law raises no presumption that the same was received in payment, but the question

is solely one of fact for the determination of the jury. In such cases the presumption is at least equally as strong that the paper was only intended as collateral security as that it was taken in absolute payment. And if this be true there was no error in the charge of the judge to the jury. When the Court charged that the acceptance of the drafts by the Plaintiffs was no evidence of payment, he must have meant, and the jury must have understood him to mean, that from that fact no legal presumption could be drawn that the draft was received in payment—that it was not *prima facie* evidence of payment. The Court was instructing the jury solely as to the law of the case; with the facts the Court had nothing to do. In my opinion the Court might have even gone farther than it did, and held that the delivery of a receipted bill for the goods would have formed no legal presumption of payment. But limited as the charge was to the simple question of whether the acceptance of the draft by the Plaintiffs formed any evidence that the same was taken in payment, we do not think that the learned judge mis-stated the law, nor that the jury could have been misled by the language used. Almost the sole issue formed by the pleadings is as to whether this draft was received in full payment, or only as collateral security. This was the question submitted to the jury, and it is scarcely possible to conceive that they did not understand that they were to consider every fact bearing upon this issue, and that the language of the judge meant only that the law raised no presumption that the draft was received in payment, from the naked fact of its delivery. Although it may be true that the jury could not have found that there was payment by draft, unless the same had been delivered, yet it does not follow that the delivery in law constituted any evidence one way or another, as to how the same was received by Plaintiffs.

We have treated this subject as though the draft was given on a contemporaneous sale of goods, though as a matter of fact it is claimed by the appellants that it was given for a precedent debt, and that question would perhaps be a proper one for the determination of the jury. But the charge would be still less open to objection if the draft were given for a pre-

cedent debt, and the respondents at least cannot complain that this view has been adopted.

The order granting a new trial is reversed, and judgment ordered in favor of the Plaintiffs.